## UNITED STATES, for Use and Benefit of GENERAL LIGHTERAGE CO. v. MARYLAND CASUALTY CO.

### No. 1383.

District Court, D. Maine, S. D.

Dec. 28, 1938.

Woodman, Skelton, Thompson & Chapman, of Portland, Me. (N. W. Thompson and R. S. Chapman, of counsel), for General Lighterage Co.

John D. Clifford, Jr., U. S. Atty., and Edward J. Harrigan, Asst. U. S. Atty., both of Portland, Me.

PETERS, District Judge.

This is a suit under the Heard Act (40 U.S.C.A. § 270) brought by the General Lighterage Company in the name of the United States against the Maryland Casualty Company, into which the United States has also come as an intervenor in its own interest, asserting a prior claim on the money involved.

The matter was submitted to the Court without a jury on an agreed statement of facts with some supplementary evidence in the way of letters and the contract in question. From these sources of information it appears that the United States, through an engineer officer, made a written contract in April, 1933, with the contracting firm of Baker & Hudson for the removal of a sunken barge from the tidewaters of Portland harbor, at a contract price of $5,000. The work was to be completed on June 16, 1933. The contractors gave the United States a bond in the sum of $2500 conditioned for the performance of the contract in accordance with its terms.

The General Lighterage Company of Portland furnished labor and material to the contractors who succeeded in partially raising the wreck of the barge and towing it some distance toward its destination at

sea, but got no farther than a point near Cushings Island where the wreck grounded again. This was on June 6, 1933.

The contractors, having met with disaster, delayed further work pending an attempt to obtain other equipment. On October 11, 1933, the United States Engineer's Office wrote the contractors that unless the wreck was completely removed in accordance with the contract by October 25, 1933, "or such plant placed on the work as will in the opinion of this office insure its complete removal within a reasonable time thereafter", recommendation would be made to the Department that the contract be terminated and the removal of the wreck accomplished by such method as might be deemed advantageous by the United States. "In such event the additional cost will become a claim against your performance bond."

Correspondence indicates that in October and November, with the consent of the Government, the contractors were making efforts to obtain new equipment and finish the undertaking. However, on January 31st, 1934, they were notified in writing by the Engineer Office as follows:

"This is to notify you that because of your failure to complete the work of removing the wreck of the sunken barge Biwabik from Portland Harbor, Maine, in accordance with the terms of your contract with the United States, dated April 6, 1933, all work contemplated by the aforesaid contract is hereby taken out of your hands under the provisions of Article 4 thereof."

Thereafter the United States made a contract with the General Lighterage Company for $4900 to finish the undertaking, and that was done on July 18, 1934. No money was ever paid the first contractors.

At the proper time, under the Heard Act, the General Lighterage Company brought this suit in the name of the United States against the Maryland Casualty Company, surety on the original bond given by the contractors. The United States then intervened, claiming it had a prior claim under the bond. The Casualty Company admitted liability to someone and has paid the amount of the bond into court. The question is to what extent, if any, the United States has a preferential claim on this money. Whatever claim it has is prior to the claim of the Lighterage Company, under the statute.

The amount claimed by the United States is $3308.94. This is made up of the following items, as I have grouped them:

| | |
|---|---:|
| Cost to the Government of completing the work, over and above contract price | $ 163.56 |
| Expenses of inspection, etc., after date fixed for the completion of original contract | 560.96 |
| Travel of Inspector | 294.42 |
| Liquidated damages, June 17, 1933, to January 31, 1934, at $10.00 per day | 2290.00 |
| | $3308.94 |

The contract between Baker & Hudson and the United States, dated April 6, 1933, contained two articles which are important in this connection. Article 4 provided that:

"If the contractor shall delay or fail to commence with the delivery of the material or the performance of the work, as specified herein, or shall, in the judgment of the contracting officer, fail to prosecute faithfully and diligently the work in accordance with the specifications and requirements of this contract, then, in either case, the contracting officer shall have power * * * to take the work out of the hands of the contractor by giving notice in writing to that effect, * * * and upon the giving of such notice all payments to the contractors under this contract shall cease, and all money or reserved percentage due or to become due thereunder shall be retained by the United States until the final completion and acceptance of the work herein stipulated to be done; and the contracting officer shall have the right to proceed forthwith to secure the delivery of the material or the performance of the work by contract or otherwise, in accordance with law, conforming as nearly as practicable in completing the contract to the requirements and conditions prescribed therein. * * * Whatever sums may be expended by the United States in completing the said contract in excess of the price herein stipulated to be paid to the contractor for completing the same, and also all costs of inspection and superintendence, including all necessary traveling expenses connected therewith, incurred by the United States, in excess of those payable by the United States during the period herein allowed for the completion of the contract by the contractor, shall be charged

to the contractor, and the United States shall have the right to deduct such excess cost out of or from any money or reserved percentage retained, as aforesaid, or to recover the same, or any part thereof, from the contractor and his surety or sureties."

Article 5 provided, so far as important:

"Time shall be considered an essential feature of this contract; and in case of the failure on the part of the contractor to complete this contract within the time specified and agreed upon, the United States will be damaged thereby, and the amount of said damages, exclusive of expenses for inspection and superintendence, including necessary traveling expenses, being difficult if not impossible of definite ascertainment and proof, it is hereby agreed that the amount of said damages shall be estimated, agreed upon, liquidated and fixed in advance; and they are hereby agreed upon, liquidated and fixed at the sum of $10.00 for each and every day the contractor shall delay in the completion of this contract; and the contractor hereby agrees to pay to the United States, as liquidated damages, and not by way of penalty, the said sum of $10.00 for each and every day the contractor shall delay in the completion of this contract. Should this contract not be completed within the time specified and agreed upon, contractor shall pay, in addition to the liquidated damages hereinbefore specified, all expenses for inspection and superintendence after the date fixed for completion, including all necessary traveling expenses connected therewith * * *."

The parties have stipulated that the actual loss and damage sustained by the United States is $1018.94, which is the total claim of the United States, less the per diem damage for delay in completion of the work. The Lighterage Company, which incidentally has a claim of over $16,000 against the contractors and their bond for supplies and labor furnished them, contends that the Government cannot collect both its actual loss and the damages figured on the per diem basis. The difference between the amount payable to the Government and the penal sum of the bond will go to the Lighterage Company, as there are no other claimants.

The Government protected itself under the contract in two different ways. It could take over the work and complete it, charging any extra cost and expense to contractors; or it could wait until the job should be completed by the contractors, then collect as liquidated damages the per diem amount agreed upon. It could not adopt both courses. The two methods are inconsistent. The Government has chosen the first one, taking the work out of the hands of the contractors who cannot now complete it.

The provisions of Article 5 of the contract, providing for liquidated damages on a per diem basis for delay in completing the contract, are not applicable to the situation here, as the work was not completed, nor can it ever be, by the original contractors, on account of the Government's action in taking the completion of the work "out of their hands". There is a date from which, but no date to which the per diem damages can be calculated. One party to the contract cannot fix an arbitrary date. That party having created a situation which prevents the date ever being reached, must find some other way of estimating the damages.

There is ample authority for the proposition that a clause providing for liquidated damages for delay on a per diem basis, like the one in question, cannot be used in a situation such as presented here. The Supreme Court of New York, in Gallagher v. Baird, 54 App.Div. 398, 66 N.Y.S. 759, in construing a similar provision, used the following language [page 762]:

"It is said that the liquidated damages for which the contract made provision furnished the measure of damage. But this clause relates to delay in completion of the contract. Its language so shows: 'In case the said party of the first part shall fail to fully and entirely * * * complete within the time hereinbefore limited for such completion and delivery, * * * the said party of the first part shall and will pay to the said party of the second part the sum of fifty dollars for each and every day that the said party of the first part shall be in default.' It is manifest that this clause contemplated a completion of the contract, with damages for delay. There was no completion or attempt to complete, but an utter abandonment, and such clause was not intended to cover such a case, nor was provision made in the contract for such a contingency."

Of a similar clause it was said in Bacigalupi v. Phoenix Bldg. Co., 14 Cal.App. 632, 112 P. 892, 894:

"Manifestly this clause has relation only to damages resulting from delay only and has no bearing upon the measure of dam-

ages for abandonment of the contract and failure to complete the work at all."

Also so Moore v. Board of Regents, 215 Mo. 705–727, 115 S.W. 6.

It follows that the amount payable to the United States is limited to its agreed actual damages of $1018.94, which, with interest thereon from March 6, 1935, the date demand was made for payment, should be paid to the United States, and the balance of the $2500, paid into the registry by the surety company, should be paid to the General Lighterage Company, and it will be so ordered.