## UNITED STATES v. GROGAN et al.
### No. 203.

District Court, D. Montana,
Great Falls Division.
April 15, 1942.

See, also, D.C., 39 F.Supp. 819.

John B. Tansil, U. S. Dist. Atty., of Billings, Mont., and R. Lewis Brown, Asst. U. S. Dist. Atty., of Butte, Mont., for plaintiff.

Sterling M. Wood, Robert E. Cooke, and Fredric Moulton, all of Billings, Mont., for defendant American Surety Co.

PRAY, District Judge.

The above entitled action was tried to the court without the intervention of a jury, according to agreement of counsel.

The purpose of the action is to recover damages allegedly sustained by plaintiff for failure of defendant Grogan to perform a written contract for the construction of an Immigration Station at Babb-Piegan, Montana. Service was not obtained upon the defendant contractor, John V. Grogan, and trial was had against the defendant, American Surety Company. From an examination of the pleadings, transcript of evidence, briefs, admissions and denials of the parties, the court is satisfied that the allega-tions of the complaint have been sustained by a clear preponderance of the evidence, no proof having been submitted on the part of defendant, Surety Company, it having rested its defense mainly upon its interpre-tation of article nine of the contract in question.

The defendant Grogan was delayed 473 days in the performance of his contract and at his request and with consent of plaintiff and of the defendant American Surety Company, the time for the comple-tion of the work under the contract was ex-tended until June 20, 1933, which would in-dicate that the contractor was given con-siderable latitude in the performance of his contract, and aside from having the date for completion extended, after such delays, he was also allowed 13 months more, after the date fixed for completion, for per-formance of his contract, before the gov-ernment terminated his right to proceed further. The contractor was given this opportunity to finish the work, and for that period of time, after the definite date for completion. The government during that period was deprived of the use and occupa-tion of the premises, and there is nothing in the language of the contract to warrant the· interpretation that there was a choice of two remedies in case of default, which when made would exclude the other. Ma-terial part of article 9, in question, reads as follows: "Article 9. Delays—Damages.— If the contractor refuses or fails to prose-cute the work, or any separable part there-of, with such diligence as will insure its completion within the time specified in Article 1, or any extension thereof, or fails to complete said work within such time, the Government may, by written notice to the contractor, terminate his right to proceed with the work or such part of the work as to which there has been delay. In such event, the Government may take over the work and prosecute the same to completion by contract or otherwise, and the contrac-tor and his sureties shall be liable to the Government for any excess cost occasioned the Government thereby. If the contrac-tor's right to proceed is so terminated, the Government may take possession of and utilize in completing the work such ma-terials, appliances, and plant as may be on the site of the work and necessary therefor. If the Government does not terminate the right of the contractor to proceed, the con-tractor shall continue the work, in which event the actual damages for the delay will be impossible to determine and in lieu

872

thereof the contractor shall pay to the Government as fixed, agreed, and liquidated damages for each calendar day of delay until the work is completed or accepted the amount as set forth in the specifications or accompanying papers and the contractor and his sureties shall be liable for the amount thereof * * *."

Whether the plaintiff would be entitled to exercise both remedies provided in the contract would depend upon the state of facts before the court. If on the date when the work was to be completed the plaintiff had terminated the contract, the provision for the payment of $25 per day for each day of delay up to the date of completion could not apply for obvious reasons. But if the contractor is allowed to go ahead after the due date and dallies along with the work for 13 months without finishing, it would seem to be the better sense and reasoning to hold that the plaintiff would be entitled to collect for such delay according to the plain terms of the contract.

It seems to this court that the choice of language in article 9 was wisely made to provide for just such a state of facts as is found to exist here. What is there in the wording of the article to justify the assumption, following one line of authorities, that upon the adoption of one course the other "passes out of the picture"? When the contractor is given an opportunity to make good his promise, after failure to perform in time, and fails again after depriving the government of the use of its property for 13 months, so that it is obliged to take over the work, is not such a contingency precisely provided for in article 9. To adopt the interpretation contended for by defendant's counsel the government would be powerless to collect the amount agreed to be paid per day for failure to complete the work on the date agreed upon, if it should at any time terminate the right to further delay the completion of the work, no matter to what extent or for how long a period the contractor dragged the work along, whether for 13 months, as here, or for as many years. If the government terminated the contractor's right to proceed nothing could be collected under the contract, no matter what the damage to plaintiff for loss of use and occupancy of the building; plaintiff could recover only the additional cost of completing the unfinished job. If that meaning is to be read into the

contract, under the state of facts here, the only way the plaintiff could have protected itself from damage would be to have ended the right of the contractor to proceed further on the date agreed upon for the completion of the work, the balance of article 9 for unliquidated damages at $25 per day would seem to be absolutely meaningless. This court may be in error, but it probably will not be long before the higher court will have an opportunity to correct it—at any rate, for the 9th Circuit. This court has given much thought to the principal question involved since the trial and after consideration of the able briefs filed by counsel, but has been unable to find sufficient reason to change the views expressed in the memorandum opinion written on overruling the defendant's motion to dismiss, D.C., 39 F.Supp. 819, consequently the decision here will be in favor of the plaintiff with costs.

Findings of ultimate facts and conclusions will be submitted conformably to the foregoing views.