UNITED STATES *v.* AMERICAN SURETY CO.

No. 381.   Argued March 27, 28, 1944.—Decided April 24, 1944.

*Mr. Robert L. Stern,* with whom *Solicitor General Fahy, Assistant Attorney General Shea,* and *Messrs. W. Marvin Smith* and *Hubert H. Margolies* were on the brief, for the United States.

*Mr. Homer Cummings,* with whom *Messrs. Carl McFarland* and *Sterling M. Wood* were on the brief, for respondent.

MR. JUSTICE MURPHY delivered the opinion of the Court.

On June 24, 1931, one John V. Grogan entered into a contract [1] with the United States to construct certain public buildings at the United States Inspection Station at

---

[1] The form of contract used was U. S. Standard Form No. 23 construction contract, approved by the President on November 19, 1926, and used between 1926 and 1935.

Babb-Piegan, Montana. Respondent became the surety on Grogan's performance bond to the United States. The completion date of the contract was March 4, 1932, but this was extended to June 20, 1933. Grogan failed to complete the work by the extended date. The Government, however, allowed him to continue with the construction. On July 20, 1934, thirteen months later, the work was still uncompleted. Pursuant to its authority under Article 9 of the construction contract, the Government thereupon terminated Grogan's right to proceed with the work because of his continuing default. The Government finished the work through another contractor, expending $2,044.04 more than it would have been required to expend had Grogan completed the work.

The United States brought this suit in the District Court to recover the excess cost and also to recover liquidated damages of $9,875 for the delay occasioned by Grogan's default. The liquidated damages were computed on the basis of an agreed $25 per day for the 395 days between June 20, 1933, the extended date for completion, and July 20, 1934, when the contract right to proceed was terminated. Grogan was not served and never appeared. The District Court denied respondent's motion to strike from the complaint the paragraph alleging a right to liquidated damages. *United States* v. *Grogan*, 39 F. Supp. 819. The court subsequently rendered judgment, after trial without a jury, for the United States for $2,044.04 as excess cost of completion and $9,875 as liquidated damages for delay. See *United States* v. *Grogan*, 44 F. Supp. 871. On appeal, the court below affirmed the judgment as to the excess cost but reversed as to the liquidated damages. *American Surety Co.* v. *United States*, 136 F. 2d 437. The public importance of the issue of the Government's right to liquidated damages under these circumstances led us to grant certiorari. 320 U. S. 729.

Section 21 of the Act of June 6, 1902,[2] provides that all contracts for the construction of any public building under the control of the Treasury Department shall contain a stipulation calling for liquidated damages for delay in completion of the work and that such stipulation shall be conclusive and binding upon all parties. Proof of actual damages is rendered unnecessary. This statute, however, does not purport to require liquidated damages to be paid in amounts or under circumstances beyond those stipulated by the parties. *Robinson* v. *United States*, 261 U. S. 486, 488. It was pursuant to this statutory command that Article 9 of the construction contract in issue was inserted. Thus this article is determinative of the Government's right to liquidated damages under the circumstances of this case.

Article 9, set out in the margin,[3] provides in effect that: (1) if the contractor refuses or fails to prosecute the work

---

[2] C. 1036, 32 Stat. 310, 326; 40 U. S. C. § 269. This provides: "In all contracts entered into with the United States for the construction or repair of any public building or public work under the control of the Treasury Department, a stipulation shall be inserted for liquidated damages for delay; and the Secretary of the Treasury is authorized and empowered to remit the whole or any part of such damages as in his discretion may be just and equitable; and in all suits hereafter commenced on any such contracts or on any bond given in connection therewith it shall not be necessary for the United States, whether plaintiff or defendant, to prove actual or specific damages sustained by the Government by reason of delays, but such stipulation for liquidated damages shall be conclusive and binding upon all parties." See H. Rep. No. 1794, p. 8 (57th Cong., 1st Sess.); 35 Cong. Rec. 4935.

[3] *"Delays—Damages.*—If the contractor refuses or fails to prosecute the work, or any separable part thereof, with such diligence as will insure its completion within the time specified in Article 1, or any extension thereof, or fails to complete said work within such time, the Government may, by written notice to the contractor, terminate his right to proceed with the work or such part of the work as to which there has been delay. In such event, the Government may take over

with proper diligence or to complete his work within the specified time, the Government may at any time terminate his right to proceed and prosecute the same to completion by contract or otherwise, in which case the Government may recover from the contractor or his surety any excess cost occasioned thereby; (2) "if the Government does not terminate the right of the contractor to proceed, the contractor shall continue the work, in which event the actual damages for the delay will be impossible to determine and in lieu thereof the contractor shall pay to the Government as fixed, agreed, and liquidated damages for each calendar day of delay until the work is completed or accepted the amount as set forth in the specifications." In this instance, paragraph 5 of the accompanying specifications provides that "the contractor shall pay to the government the amount of Twenty-Five Dollars ($25.00) as fixed, agreed, and liquidated damages for each calendar day's delay in the completion of the contract." This paragraph merely provides the agreed rate of the per diem liquidated damages to be paid in the situations contemplated by Article 9. It is obviously not intended to spell out the situations where liquidated damages are to be paid and cannot, con-

---

the work and prosecute the same to completion by contract or otherwise, and the contractor and his sureties shall be liable to the Government for any excess cost occasioned the Government thereby. If the contractor's right to proceed is so terminated, the Government may take possession of and utilize in completing the work such materials, appliances, and plant as may be on the site of the work and necessary therefor. If the Government does not terminate the right of the contractor to proceed, the contractor shall continue the work, in which event the actual damages for the delay will be impossible to determine and in lieu thereof the contractor shall pay to the Government as fixed, agreed, and liquidated damages for each calendar day of delay, until the work is completed or accepted the amount as set forth in the specifications or accompanying papers and the contractor and his sureties shall be liable for the amount thereof. . . ."

trary to the Government's contention, control the language of Article 9.[4]

The impact of Article 9 on the facts of this case is clear. The contractor having failed to complete his work within the specified time, the Government exercised its option under the first part of Article 9 to terminate his right to proceed. This power to terminate could be exercised before or on the stipulated completion date or, as in this case, at any date thereafter. The Government then made other arrangements to complete the construction work and was entitled to, and did recover, the excess cost occasioned thereby. It thus waived its right to liquidated damages under the second part of Article 9. That right is conditioned upon the Government not terminating the contractor's right to proceed. Where there is such a termination, even though it be subsequent to the stipulated completion date, the right to liquidated damages disappears. Such has been the uniform and correct result heretofore reached in the application of this type of contract provision. See *United States* v. *Cunningham,* 125 F. 2d 28; *United States* v. *Maryland Casualty Co.,* 25 F. Supp. 778; *Maryland Casualty Co.* v. *United States,* 93 Ct. Cls. 247. See also *Fidelity & Casualty Co.* v. *United States,* 81 Ct. Cls. 495; *Commercial Casualty Insurance Co.* v. *United States,* 83 Ct. Cls. 367; *American Employer's Insurance Co.* v. *United States,* 91 Ct. Cls. 231.

The Government has urged us to read the second part of Article 9 as though the right to liquidated damages were

---

[4] The directions for the preparation of construction contracts upon the form here involved state that "The specifications should include a paragraph stating the amount of liquidated damages that will be paid by the contractor for each calendar day of delay, as indicated in Article 9 of the contract." It was pursuant to this direction that paragraph 5 of the specifications in the instant case was inserted. This instruction indicates that the specifications are to include no more than "the amount" or rate of per diem damages that are to be applied "as indicated in Article 9 of the contract."

based, not upon a condition precedent that the Government not terminate, but upon a continuing condition, under which liquidated damages would accrue "so long as the Government does not terminate" the contractor's right to proceed. This is said to be the only way to give full effect to the prime purpose of § 21 of the 1902 Act to eliminate the uncertainties and difficulties of establishing actual damages to the Government by delay in obtaining the use of a public building. Otherwise proof is required of actual damages for the delay where termination occurs before completion in the teeth of a statute which dispenses with such proof in suits on a construction contract containing a stipulation "for liquidated damages for delay." The Government also claims that failure to allow it liquidated damages under these circumstances leaves it entirely to the contractor whether liquidated damages will ever be paid since he can relieve himself of such liability at any time short of completion simply by abandoning the work or provoking the Government to terminate his right to proceed. The Government contracting officers in turn would be induced to allow the contractor to proceed to completion despite inexcusable delays so as not to forfeit mounting liquidated damages, thus precluding prompt completion and occupancy of needed structures.

But we are confronted here with an unambiguous contract that clearly limits the right to liquidated damages to situations where the Government does not at any time terminate the contractor's right to proceed. That it may be wiser to expand the right to such damages to every case of delay, regardless of whether there is a termination, is of course not relevant in interpreting and applying clear words of limitation in the contract. We find nothing, moreover, in § 21 of the 1902 Act that fills in interstices deliberately left open by the parties. No statutory language or policy forbids the Government and a contractor from stipulating for liquidated damages in

limited situations only. Indeed the statute makes any such stipulation "conclusive and binding upon all parties," thereby foreclosing the Government's right to object to its own failure to insist upon liquidated damages in other situations. Since we are not justified in rewriting the clear provisions of the contract to include what might well have been but was not inserted, the judgment below must be

*Affirmed.*