## MANART TEXTILE CO. v. UNITED STATES.

### No. 47295.

Court of Claims.
June 1, 1948.

Edwin J. McDermott, of Philadelphia, Pa., for plaintiff.

Frank J. Keating, of Washington, D. C., and H. G. Morison, Asst. Atty. Gen., for defendant.

Before JONES, Chief Justice, and LITTLETON, WHITAKER, MADDEN, and HOWELL, Judges.

JONES, Chief Justice.

This is a suit for the recovery of a portion of the liquidated damages assessed against the plaintiff for delay in delivery of articles covered by the contract.

The plaintiff agreed to furnish and deliver to the defendant 600,000 pairs of canvas leggings for the price of $0.725 per pair, in accordance with specifications.

A contract was signed September 17, 1941. Ten percent of the articles were to be delivered within 120 days; twenty percent each thirty days thereafter for four periods, and the remainder within a period of 270 days from the signing of the contract.

On April 27, 1942, change order A was issued by the contracting officer, by the terms of which the method of dyeing the leggings was changed from a mineral dye to a vat dye. The contract price was increased $0.02951727 per pair and the contract period extended three days.

On June 26, 1942, the contracting officer changed the sizes of 243,567 pairs of the leggings, which change reduced the requirements for material and reduced the contract price $0.0041298 per pair.

Change orders A and B were thereafter on September 16, 1942, at plaintiff's request, merged into one order designated change order C, and the costs recomputed, which showed a net increase in the contract price of $0.03351 per pair for 242,111 pairs of the leggings covered by the combined orders.

On November 17, 1942, change order D was issued. This was merely a summary of change orders A, B, and C.

The dates of delivery as modified by change order A were as follows:

| No. of pairs: | Due Date—1942 |
|---|---|
| 60,000 | January 19. |
| 120,000 | February 18. |
| 120,000 | March 20. |
| 120,000 | April 19. |
| 120,000 | May 19. |
| 60,000 | June 18. |

---

[4] In re Fullam, 80 U.S.App.D.C. 273, 152 F.2d 141.

[5] Stewart v. St. Sure, Judge, 9 Cir., 109 F.2d 162.

Delivery of the first installment of 60,000 pairs of the leggings was completed March 6, 1942; delivery of the second installment of 120,000 pairs was completed April 9, 1942; of the third installment of 120,000 pairs only 62,111 pairs were delivered, all of them after the due date.

On May 18, 1942, the contracting officer by letter terminated plaintiff's right to deliver 356,433 pairs of leggings. Liquidated damages were assessed and collected by the defendant for the delay in the delivery of the first two installments and for the delivered portion of the third installment. These damages are not an issue in the case.

The Government did not purchase the undelivered portion of the leggings from plaintiff and did not purchase them from any other contractor. In fact, it announced that it would not purchase them. The contracting officer, however, assessed liquidated damages for the delay from the date delivery was due until the time the contract was cancelled.

The plaintiff contends that since the defendant exercised its privilege of cancelling the remaining part of the contract it had no right to collect liquidated damages for that part of the contract which was cancelled.

It has been repeatedly held in construing standard construction contracts that when the defendant exercises the privilege of cancellation it may let the unfinished portion to a new contractor and collect the excess costs, but it may not also collect liquidated damages; in other words, that it has the choice of permitting the plaintiff to finish and collecting liquidating damages, or letting the contract elsewhere and collecting excess costs, but that it cannot do both. United States v. American Surety Co., 322 U.S. 96, 100, 64 S.Ct. 866, 88 L. Ed. 1158; United States v. Cunningham, 75 U.S.App.D.C. 95, 125 F.2d 28; Maryland Casualty Co. v. United States, 93 Ct.Cl. 247; Fidelity & Casualty Co. of New York v. United States, 81 Ct.Cl. 495.

The defendant contends that the wording of the delay and damages provision in this contract is different from the language in the standard construction contract. This is true. Article 17 of the instant contract is set out in a footnote.[1] It stipulates that

[1] Delays-Damages.—If the contractor refuses or fails to make delivery of acceptable material or supplies within the time or times specified in Article 1, or any extension or extensions thereof, the actual damage to the Government for the delay will be impossible to determine, and in lieu thereof the contractor shall pay to the Government as fixed, agreed, and liquidated damages for each calendar day of delay in the delivery of any articles, the amount as set forth in the specifications or accompanying papers, and the contractor and his sureties shall be liable for the amount thereof: Provided, however, That if the contractor fails to make delivery of any portion of the material or supplies within the time specified, the Government reserves the right to terminate the right of the contractor to deliver all or any portion of the undelivered material or supplies, and to purchase similar material or supplies in the open market or secure the manufacture and delivery thereof by contract or otherwise, charging against the contractor and his sureties any excess cost occasioned the Government thereby, together with liquidated damages accruing until such time as the Government may reasonably procure similar material or supplies elsewhere: Provided, further,

That the contractor shall not be charged with liquidated damages or any excess cost when the delay in delivery is due to unforeseeable causes beyond the control and without the fault or negligence of the contractor, including, but not restricted to, acts of God or the public enemy, acts of the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, unusually severe weather, and delays of a subcontractor due to such causes unless the Contracting Officer shall determine that the materials or supplies to be furnished under the subcontract are procurable in the open market, if the contractor shall notify the Contracting Officer in writing of the cause of any such delay, within 10 days from the beginning thereof, or within such further period as the Contracting Officer shall, with the approval of the head of the department or his duly authorized representative, prior to the date of final settlement of the contract, grant for the giving of such notice. The Contracting Officer shall then ascertain the facts and extent of the delay and extend the time for making delivery when in his judgment the findings of fact justify such an extension, and his findings of fact thereon shall be final and conclusive on the parties hereto, subject

in the event of failure or refusal to make delivery of material within the time specified the defendant may assess and collect liquidated damages at the specified rate. Attached to this right, however, is the proviso that if the contractor fails to make delivery of any portion of the material or supplies within the time specified, the Government reserves the right to terminate the right of the contractor to deliver all or any portion of the undelivered material, and to purchase similar material and supplies in the open market, charging against the contractor and its sureties any excess costs occasioned the Government thereby, together with liquidated damages accruing until such time as the Government may reasonably procure similar supplies elsewhere.

The meaning and application of this proviso is the controversy here.

The plaintiff contends that regardless of whether under the language of the contract the defendant could have purchased the supplies elsewhere and assessed damages for delay until such time as it could have reasonably secured similar supplies from another source, it could not assess damages when it decided not to purchase the material at all; that the effect of this action was to terminate the remaining portion of the contract entirely and that the defendant could not collect liquidated damages for a delay in the delivery of the portion of the contract as to which there was no delivery.

The defendant contends that notwithstanding its decision to cancel the undelivered portion of the contract and not purchase anywhere, it may nevertheless assess damages on the undelivered portion until such time as the contract was cancelled.

We do not think the defendant's contention can stand the light of reason or the logic of analysis. The contract calls for the assessment of liquidated damages for the delay in delivery. It can hardly be said there was delay in delivery when there was no delivery and when that failure to deliver was caused by the action of the defendant in cancelling the remaining portion of the contract.

It was a divisible contract. The defendant had assessed and collected damages for the delay in delivery of that portion of the contract in which delivery was accepted. When the defendant saw fit to cancel the undelivered portion and decided that it would not purchase or accept delivery of that portion at all, it cannot claim liquidated damages for the part which it decided it did not want.

There is another provision of the contract which excuses plaintiff for delay in delivery due to acts of God, the public enemy, acts of the Government, fires, floods, epidemics, etc.

With the shortages due to wartime conditions plaintiff might have pleaded this provision as an excuse for the delay in the delivery of that portion of the contract which was actually delivered, but it did not see fit to do so and therefore that portion of the damages collected must be allowed to stand.

The plaintiff also contends that the changing of the form of the dyeing from mineral to vat caused a greater shrinkage in the cloth as well as delay in delivery, but since it offered no proof in support of this allegation that contention must also be denied.

While there are some expressions in Article 17 which would indicate that defendant might charge plaintiff with the excess costs of a relet contract, plus the liquidated damages for delay, when the article is construed in its entirety we are inclined to the view that such privilege is limited to a case where the defendant actually wanted the goods and procured them elsewhere, and since it saw fit simply to cancel the undelivered portion of the contract it was a complete cancellation of that portion.

It had the choice of insisting that plaintiff deliver the remaining portion of the goods contracted for, and that damages be collected for any delay in such delivery, but in cancelling out the remaining portion of the contract it took away from plaintiff

---

only to appeal within 30 days, by the contractor to the head of the department concerned or his duly authorized representative, whose decision in such appeals as to the facts of delay and the extension of time for making delivery shall be final and conclusive on the parties hereto.

any possibility of securing any profit on the undelivered portion. To follow this up with an assessed tribute which would require plaintiff to pay damages on goods which the defendant had decided it would not purchase either from plaintiff or any one else would require a technical construction which we are unwilling to make.

Plaintiff is entitled to recover the liquidated damages that were assessed and collected for alleged delay in delivery of that portion of the contract which was never delivered, to wit, the sum of $10,275.88.

It is so ordered.

HOWELL, MADDEN, WHITAKER and LITTLETON, Judges, concur.