**MacLAREN SPORTSWEAR CO. v. UNITED STATES.**

**No. 49456.**

United States Court of Claims.
Jan. 8, 1952.

Edwin J. McDermott, Philadelphia, Pa., for the plaintiff.

Frank J. Keating, Washington, D. C., with whom were Asst. Atty. Gen. Holmes Baldridge and Acting Asst. Atty. Gen. Newell A. Clapp, for the defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

Plaintiff's suit is based upon two contracts for furnishing and delivering khaki trousers to the defendant. The facts of the case have been stipulated by the parties.

On February 24, 1943, defendant awarded plaintiff contract W669 qm–26646 for 90,000 pairs of trousers, cotton, khaki, officers', 8.2 oz. (unfinished bottoms) at $1.00 per pair.

On April 8, 1943, plaintiff was awarded contract W669 qm–27619 for furnishing and delivering 200,000 pairs of trousers, cotton, khaki special (double needle joining seams) (finished bottoms) at $0.68 per pair.

Both contracts provided for the assessment of liquidated damages for delays in deliveries: W669 qm–26646 at the rate of one-tenth of one percent of the contract price for each day's delay in delivery of each item, and W669 qm–27619 at the rate of one-fifth of one percent.

Contract W669 qm–26646 provided for deliveries of the trousers as follows:

"Schedule of Deliveries

"Seventeen percentum (17%) within thirty (30) days; thirty-three percentum (33%) within the next thirty (30) days; thirty-four percentum (34%) within the next thirty (30) days; and the remainder of the quantity contracted for complete within one hundred twenty (120) days after date of receipt of first shipment of Government material (constructive or actual date, whichever may be earlier)."

Under the terms of the contract, the quantity of 90,000 trousers under contract W669 qm–26646 were required to be delivered as follows:

| Date due (1943) | Percent | Number of trousers |
|---|---|---|
| April 1 | 17 | 15,300 |
| May 1 | 33 | 29,700 |
| May 31 | 34 | 30,600 |
| June 30 | 16 | 14,400 |

During the period April 1, 1943, to and including May 6, 1943, plaintiff actually delivered to the defendant 4,461 trousers. On this latter date defendant terminated plaintiff's right to deliver 33,000 pairs of trousers pursuant to Article 25 of the contract, which provided:

"*Delays—Liquidated damages.*—If Contractor refuses or fails to make delivery of acceptable material or supplies within the time or times specified in Article 1, or any extension or extensions thereof, the actual damage to the Government for the delay will be impossible to determine, and in lieu thereof the Contractor shall pay to the Government, as fixed, agreed, and liquidated damages for each calendar day of delay in the delivery of any article, a sum equal to one-tenth of one percentum ($\frac{1}{10}$ of 1%) of the price of such article, for each day's delay after the time specified for delivery, and the Contractor and his sureties shall be liable for the amount thereof: Provided, however, That if the Contractor fails to make delivery of any portion of the material or supplies within the time specified in Article 1, the Government reserves the right to terminate the right of the Contractor to deliver all or any portion of the undelivered material or supplies, and to purchase similar material or supplies in the open market or secure the manufacture and delivery thereof by contract or otherwise, * * *."

The Government did not purchase the terminated quantity of 33,000 pairs of trousers elsewhere.

On October 14, 1943, supplemental agreements were drawn by the defendant and executed by the parties for each of the foregoing contracts, W669 qm–26646 and W669 qm–27619, by which the Delays—Liquidated Damages clause of each contract was deleted. Each supplemental agreement contained this provision: "That any rights accrued to or liabilities incurred by the parties hereto under the terms and conditions of the aforesaid Delays—Liquidated Damages clause prior to the date hereof, shall in no wise be affected by the terms hereof."

The defendant charged plaintiff liquidated damages on all deliveries made after

October 13, 1943, by assessing the rate of liquidated damages stated in the original contracts on the number of days of delay from the date due to and including October 13, 1943. The amount of damages so charged amounted to $198.62 ($259.88 less a credit of $61.26) on contract W669 qm–26646 and $103.52 on contract W669 qm–27619.

The defendant has furnished plaintiff with a statement of account between the parties, and a Certificate of Settlement dated February 11, 1949, was issued by the General Accounting Office advising plaintiff that it was indebted to the defendant in the amount of $63.78 ($61.26 under contract W669 qm–26646 and $2.52 under contract W669 qm–27619) representing liquidated damages due under the terms of the two contracts. A review of the settlement by the Comptroller General at plaintiff's request resulted in its affirmation on August 2, 1949.

Plaintiff sues to recover the amounts of $198.62 and $103.52 plus an additional amount of $1,025.06 which represents liquidated damages based upon the 90,000 delivery schedule called for in contract W669 qm–26646 instead of the 57,000 delivery schedule which remained after the termination of plaintiff's right to deliver 33,000 pairs of trousers on May 6, 1943.

Plaintiff makes two contentions: first, that because the delivery schedule was expressed in percentages for delivery every thirty days, that when the number of trousers to be furnished was reduced from 90,-000 to 57,000 the percentages should have been based upon the reduced contract quantity and, second, that no liquidated damages should have been assessed on deliveries made after October 13, 1943, since the liquidated damage clause was deleted on October 14, 1943.

On May 6, 1943, the date when the contract quantity was reduced from 90,000 to 57,000 pairs of trousers, the plaintiff was over 40,000 pairs behind the schedule of delivery required of it by the contract (15,300 pairs due April 1, 29,700 pairs due May 1, minus 4,461 pairs delivered to that date). While there is no explanation for such delay in the record before us, it is apparent, we believe, that had plaintiff been permitted to continue in default until the final date for delivery under the contract, defendant might very well have been charged with failure to mitigate the liquidated damages by declaring a termination of a certain portion of the contract when it first became reasonably satisfied that plaintiff would not be able to meet the delivery schedule. In that sense, therefore, the termination by defendant of the delivery of 33,000 pairs of trousers relieved plaintiff not only of any oppression upon it resulting from its inability to meet its delivery responsibilities under the contract, but also the possibility of a burdensome assessment of liquidated damages, the amount of which would have become greater as the delays continued.

Defendant had the undisputed right under Article 25 (supra) to terminate plaintiff's right to deliver all or any portion of the supplies upon the failure of plaintiff to make deliveries "within the time specified." There is nothing indefinite or uncertain regarding the quantities and dates upon which the deliveries were to be made even though the "Schedule of Deliveries" was expressed in percentages. By the simple application of the expressed percentages to the total of 90,000 trousers, the exact quantities and the dates upon which delivery was to be made became fixed as set out in the table above.

■ When the defendant terminated plaintiff's right to deliver 33,000 pairs of trousers, it is logical to assume that this figure applied to the last 33,000 pairs to be delivered since at the very time of termination plaintiff was already in default over 40,000 pairs. Plaintiff would have us say that the effect of such termination amounted to an amendment to the contract reducing the quantity to be delivered from 90,000 to 57,000 pairs, and the application of the delivery percentages to this latter figure. However, as defendant correctly points out, in order for plaintiff to recover upon this theory, the contract itself would have to contain a provision to the effect that if a portion of the contract quantity was terminated, then the delivery schedule would

be recomputed in accordance with the percentages set forth in the delivery schedule on the basis of such reduced quantity. The contract contained no such provision and the termination relieved plaintiff of the burden of delivering 33,000 pairs of trousers which it had obligated itself to do under the terms of its contract. Plaintiff was already in default and liable for liquidated damages upon the undelivered portion of 90,000 trousers at the date of the termination and we accordingly reject plaintiff's first contention and hold that liquidated damages were properly assessed by defendant.

Plaintiff also says that because of the supplemental agreements dated October 14, 1943 (supra), the defendant improperly assessed liquidated damages on all deliveries made after October 13, 1943. At the time these agreements were executed plaintiff was in default and liable under Article 25 of the contract for liquidated damages on all deliveries which were due up to and including October 13. Defendant assessed liquidated damages as follows:

| Date due | Date of delivery | Pairs of trousers delivered | Days of delay up to and including Oct. 13, 1943 | Liquidated damages |
|---|---|---|---|---|
| 5-31-43 | 11-1-43 | 174 | 135 | $23.49 |
| 5-31-43 | 11-18-43 | 596 | 135 | 80.46 |
| 5-31-43 | 12-14-43 | 30 | 135 | 4.05 |
| 5-31-43 | 12-29-43 | 260 | 135 | 35.10 |
| 5-31-43 | 1-18-44 | 246 | 135 | 33.21 |
| 5-31-43 | 2-18-44 | 589 | 135 | 79.52 |
| 5-31-43 | 6-21-44 | 30 | 135 | 4.05 |
| | | | | 259.88 |

Thus it is apparent that defendant assessed liquidated damages which had accrued prior to October 14, 1943, against plaintiff's liability for delays in delivery which had also accrued prior to that date. No liquidated damages were assessed for any period subsequent to October 13, 1943.

Under the clause contained in the supplemental agreements, any rights accrued to, or liabilities incurred by, the parties under the terms and conditions of the Delays— Liquidated Damages clause prior to October 13, 1943, were expressly saved by the reservation "shall in nowise be affected by the terms hereof."

The right to assess liquidated damages accrued to defendant for each day of delay on all trousers due under the delivery schedule up to and including October 13, and plaintiff's liability for such damages had also accrued at that time. The real effect of the supplemental agreements was to cut off any further liability on plaintiff's part for liquidated damage for delays in deliveries which were due under the delivery schedule after October 13 1943.

The situation here involved is distinguishable on the facts from those with which we dealt in Manart Textile Company v. United States, 77 F.Supp. 924, 111 C.Cl. 540, and Bethlehem Steel Co. v. United States, 75 C.Cl. 845.

We, therefore, reject plaintiff's contentions and hold as a matter of law that defendant properly assessed liquidated damages against plaintiff and that in accordance with the stipulation of the parties the defendant is entitled to recover the sum of $61.26 from plaintiff under the terms of contract W669-qm–26646 and the sum of $2.52 under the terms of contract W669 qm–27619.

Plaintiff's petition will be dismissed. Judgment will be entered in favor of the defendant against plaintiff for the sum of $63.78.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur