832

## COAT CORPORATION OF AMERICA v. UNITED STATES.
### No. 48250.

United States Court of Claims.
July 15, 1952.

Edwin J. McDermott, Philadelphia, Pa., for plaintiff.

Kendall M. Barnes, Washington, D. C., with whom was Asst. Atty. Gen. Holmes Baldridge, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

WHITAKER, Judge.

Plaintiff sues on a contract with the defendant's Quartermaster Corps to furnish 7,500 officers' raincoats at $5.50 each, which was allegedly modified by a supplemental agreement raising the price to $9.15 each. Defendant claims the supplemental agreement was executed without authority and that it is not bound by it.

The original contract was dated December 14, 1944. It called for delivery of the entire quantity by February 20, 1945. In Article 5 the contract authorized the Government to terminate it if the coats were not delivered on time. This article appears in a note below.[1]

---

1. *Delays-Damages.*—(a) If the Contractor refuses or fails to make deliveries of the supplies within the time specified or any extension thereof, the Government, subject to the provisions of paragraph (b) herein, may, by a notice in writing from the Contracting Officer to the Contractor of its intention to terminate under this Article, terminate the right of the Contractor to deliver all or any portion of the undelivered material or supplies. In such event, the Government may (1) require the Contractor to deliver to the Government such completed supplies, partially completed supplies and materials, parts, plans, drawings, information, and contract rights of the Contractor (hereinafter called manufacturing material), as the Contractor has produced or acquired for the performance of such portion of this contract as to which the right to proceed with delivery is terminated, and accomplish or secure the completion or manufacture of supplies therewith; and,

in addition thereto or in lieu thereof (2) purchase in the open market or secure by contract or otherwise, the manufacture and delivery of supplies similar to those called for by this contract in an amount which together with the supplies, if any, completed under (1) above shall not exceed the amount of supplies the right to proceed with delivery of which is terminated. If delivery is made pursuant to clause (1) of the preceding sentence the Government shall pay to the Contractor, less any previous payments, the following: a. For each unit of the completed supplies accepted by the Government the unit contract price, and b. for all partially completed supplies and manufacturing material delivered, the unit contract price for each unit of supplies completed or manufactured therewith, less the cost to the Government of completion or manufacture, but if that cost exceeds the unit contract price, the Contractor and his sureties shall be liable

By February 27, 1945, plaintiff itself had delivered 6,371 coats, but all of them, except 100, had been rejected. In addition, plaintiff had delivered through a subcontractor 2,095 coats, of which 137 had been rejected. No further coats were delivered, apparently because plaintiff learned defendant intended to terminate the contract.

On March 13, 1945, defendant wired plaintiff that its right to deliver 5,400 coats under the contract was being terminated because of the delay. Formal notice to this effect was mailed on May 1.

For the 2,058 acceptable coats delivered, plaintiff has been paid the contract price of $5.50 each. It claims the revised price of $9.15 under the supplemental agreement.

This supplemental agreement recited the provisions of article 26 of the original contract providing for a revision of the price, and stated that it was executed under the authority of the First War Powers Act, 50 U.S.C.A.Appendix, § 601 et seq. Article 26, quoted in the footnote below,[2] provides for a revision in the price based upon the actual experience of the contractor in producing 30 percent of the articles.

The supplemental agreement was entered into on May 16, 1945, a little over two months after the telegram terminating the contract as to 5,400 of the coats and about two weeks after the formal notice terminating it. It amended the original contract "to provide for furnishing and delivering the unterminated portion of 2,100 raincoats * * * at a unit price of $9.15 in lieu of $5.50." This contract is quoted in full in Finding 5, and also in the note below.[3]

for such excess. If the cost to the Government of supplies procured in accordance with clause (2) above exceeds the corresponding unit price or prices under this contract, the Contractor and his sureties shall be liable for such excess.

2. *Revision of entire price by negotiation.*—(a) Agreement to revise price. The Government and the Contractor recognize that the costs of performing this contract cannot be accurately estimated at the time of its execution and that the contract price fixed in Article 1 may therefore be either too high or too low. They therefore agree that the contract price shall be revised upward or downward in accordance with this Article on the basis of actual experience of the Contractor in producing 30% of the items under this contract (hereinafter called the "trial run"). They recognize that the costs of performing that part of the contract will not be typical for the remainder of the contract, but will provide sufficient information and experience to permit revision of the price. * * *

3. Whereas, Contractor was awarded Contract W 36–030 qm–11626, dated 14 December 1944, which provides for furnishing and delivering 7,500 Raincoats, Officers', Double Texture, Type II, at a unit price of $5.50, and

Whereas, Contractor's right to deliver 5,400 Raincoats was terminated in accordance with the Delays-Damage clause of subject contract, and

Whereas, Under the terms of the unterminated portion of the contract contractor was to furnish and deliver 2,100 Raincoats, and

Whereas, The terms and conditions under which subject contract was awarded provide for the revision of the entire contract price by negotiation on the basis of the actual experience of contractor in producing the items under the contract, and

Whereas, The Contractor and the Government have agreed, after a trial run and audit, to revise the unit price under the contract as hereinafter set forth, and

Whereas, It is in the interest of the Government that the contract be amended accordingly:

Now, therefore, it is hereby mutually agreed as follows:

1. That Contract W 36–030 qm–11626, dated 14 December 1944, as amended is hereby further amended to provide for furnishing and delivering the unterminated portion of 2,100 Raincoats, Officers', Double Texture, Type II, at a unit price of $9.15 in lieu of $5.50.

2. The aforesaid revision results in an increase of $7,665.00 in the contract consideration, chargeable to Allotment 212/50502 507–5164 P 131–08 S 36–030, F. A. A–4251, under which funds are available.

3. This Supplemental Agreement is entered into in accordance with and pursuant to the authority contained in the First War Powers Act and Executive Order No. 9001 [50 U.S.C.A.Appendix, § 611 note].

When this contract was entered into 2,058 of the 2,100 coats had been delivered. According to its letter the price of $9.15 applied only to the balance of 42 coats, but plaintiff says it was intended to apply to the 2,058, and it probably was. We do not decide this question, however, because we think the contract was executed without authority and, hence, is invalid.

■ The original contract called for a revision in the price only after 30 percent of the articles had been delivered. Plaintiff had defaulted on its contract and the contract had been terminated before delivery of so many. Thirty percent was 2,250; plaintiff's total deliveries were 2,058. The contract did not contemplate a revision in price where the contract was terminated for the contractor's default before it was fully, or at least substantially, performed. Article 26, providing for a revision in price after delivery of 30 percent of the articles, said, the Government and the contractor "recognize that the costs of performing that part of the contract will not be typical for the remainder of the contract, but will provide sufficient information and experience to permit revision of the price."

It is significant that defendant purchased 400 of the remainder of the coats which plaintiff did not deliver at $5.67 each, and 5,000 at $6.37 each, whereas the price under the supplemental contract was $9.15 each.

Where the contractor had defaulted before delivery of the 30 percent, the revision-of-price provision did not come into play. Experience shows that ordinarily the cost of producing the first 30 percent of articles called for in a contract is greater than that of producing the remainder. The revised price was intended to apply to 100 percent of the contract and not merely to 30 percent thereof, or less. The Government contracted to revise the price if it got its entire order, not just a small part of it.

The plaintiff was not entitled to the revision under the original contract. Therefore, the supplemental contract was without consideration to the Government. Army Procurement Regulation No. 3 provides:

"Except as otherwise specifically provided in these Regulations, approval by the Director, Purchases Division, Headquarters, Army Service Forces, will be required for each supplemental agreement or change order which does not involve the receipt by the Government of adequate legal consideration, or which modifies or releases an accrued obligation owing directly or indirectly to the Government including accrued liquidated damages or liability under any surety or other bonds. * * * The Director, Purchases Division, will signify his approval by manual execution of the supplemental agreement or change order, where such instrument is submitted, or where such instrument is not submitted, by memorandum, indorsement, letter or telegram in response to the request for approval. * * *"

This is published in 9 Federal Register, page 8390, and, therefore, under Section 7 of the Federal Register Act, 49 Stat. 502, 44 U.S.C.A. § 307, it was notice to all the world.

Plaintiff has not shown that the contracting officer had such authority.

Plaintiff is not entitled to recover. See MacLaren Sportswear Co. v. United States, 101 F.Supp. 885, 121 Ct.Cl. 396.

Defendant has filed six counterclaims. Its sixth one is on the excess of what it cost to secure the remainder of the coats undelivered by plaintiff over the original price at which plaintiff agreed to deliver them. Defendant is entitled to recover this under article 5 of the contract, since plaintiff did not qualify for a revision in the price. This excess cost amounted to $4,418.00, and in addition defendant is entitled to $1.37 to cover cost of transportation of rejected items. To partially offset it, defendant deducted from amounts due plaintiff on another contract $3,669.87, leaving a balance due of $749.50.

Defendant's first counterclaim is based on a contract between plaintiff and defendant under which plaintiff agreed to pay defendant $24,249.60 for the rejected raincoats. (The defendant had furnished the

material out of which they had been manufactured.) This has not been paid and plaintiff admits its liability therefor.

Defendant's second, third, fourth, and fifth counterclaims are for excess material furnished plaintiff under other contracts. Plaintiff does not contest the amounts demanded.

Under the second counterclaim the defendant demands and is entitled to recover $323.33. Under the third counterclaim it is entitled to recover $104.78. Under the fourth counterclaim it is entitled to $56.25, and under the fifth it is entitled to $1,347.59.

Defendant is entitled to recover from plaintiff the total sum of $26,831.05. Judgment for this amount will be entered.

Plaintiff's petition will be dismissed.