**TRANSAMERICA INSURANCE COMPANY, a California corporation,**
**Plaintiff,**

v.

**McKEESPORT HOUSING AUTHORITY,**
**Defendant.**

**Civ. A. No. 68–1181.**

United States District Court,
W. D. Pennsylvania.

Jan. 20, 1970.

William C. Walker, of Dickie, McCamey & Chilcote, Pittsburgh, Pa., for plaintiff.

Lewis J. Nescott, of Ruby, Nescott & Taylor, McKeesport, Pa., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, and ORDER OF COURT

MARSH, Chief Judge.

After non-jury trial, the court makes the following

## FINDINGS OF FACT and CONCLUSIONS OF LAW

1. Plaintiff, Transamerica Insurance Company, is a corporation engaged in the business of writing labor and performance bonds, is a citizen of the State of California, and does not have a principal place of business in Pennsylvania.

2. Plaintiff is successor by merger to the American Surety Company of New York and as such has succeeded to all rights and liabilities of said American Surety Company.

3. Defendant is a public Authority, organized and existing under the laws of the Commonwealth of Pennsylvania, is a citizen of that state, and has its principal place of business therein.

4. The United Construction Company (United) was a general contractor with whom the defendant originally contracted on or about October 19, 1959, to perform general construction work on apartments known as McKeesport Housing Project, said project being officially identified as PA–5–6.

5. The plaintiff's predecessor, American Surety Company, became the surety on United's performance bond to the Authority. (The designation of plaintiff or plaintiff-surety is used hereafter to include the American Surety Company, as well as its successor Transamerica Insurance Company.)

6. United was unable to perform, and on October 27, 1960, defendant placed said company in default in accordance with the contract. The plaintiff-surety was notified of the default. The defendant demanded that plaintiff-surety complete the work in accordance with the contract which United had failed to complete.[1] The plaintiff then notified the defendant that it had engaged the Arthur Venneri Company to complete the construction in accordance with the contract.

7. Plaintiff assumed the obligations and responsibilities of United as set forth in the construction contract, and also became entitled to all the rights and emoluments properly due and owing United thereunder.

8. By letter dated November 16, 1960 (defendant's Ex. 8), defendant terminated United's right to proceed under the contract.[2]

9. The final adjusted contract price was in the amount of $2,887,157.54.

10. It is stipulated that the amount in dispute is $83,711.15 and plaintiff-surety claims this amount with interest. The Authority denies any liability therefor. The disputed amount consists of the following items:

(a) Defendant has assessed liquidated damages for failure to complete on time and has withheld the sum of $39,900.

(b) Defendant has withheld the sum of $7,250 which it claims is the cost of repairing defective doors installed by plaintiff.

(c) Defendant has withheld the sum of $307.46 which it claims are costs incurred by it in eliminating roof vibration.

1. See Pretrial Stipulation, Item III(5).

2. The letter to United Construction Company states:

"Inasmuch as you did not respond to our letter of October 27, 1960 or take any action to correct the defaults described therein, your right to proceed with the work for the construction of low-rent housing Project PA–5–6, McKeesport, Pennsylvania has accordingly terminated as provided in the contract dated October 19, 1959, between the United Construction Company and this Authority.

"The American Surety Company has advised us that it will complete the construction of the Project."

(d) Plaintiff claims the remainder of the disputed item for extra work it performed above and beyond the contract price. The defendant refutes this item and contends that the work which the plaintiff has claimed as extra was actually work necessary for the performance of the contract, and, further, the defendant does not agree that the amount claimed is a fair and reasonable figure for the work represented thereby.

11. The original date for the completion of the contract was January 8, 1961.

12. Defendant extended the completion date to June 20, 1961.

13. The actual date of completion and acceptance was October 31, 1961.

14. The defendant withheld the sum of $51,900 from the agreed contract price, assigning as reasons therefor:

(a) Liquidated damages at the rate of $300 per day for 133 days totaling $39,900.

(b) The sum of $7,250 which defendant claimed as cost of repairing doors installed by plaintiff.

(c) The sum of $307.46 which defendant claims was incurred in installing a vibration eliminator on the roof.

15. The plaintiff was responsible for the installation of vibration eliminators, and, accordingly, the defendant was justified in withholding the sum of $307.46 from the agreed contract price.

16. Defendant had no right to withhold any sum for alleged defective doors, and defendant owes the plaintiff the sum of $7,250, with interest from October 31, 1961.

17. During the year 1963, plaintiff installed 126 new doors under protest, at the cost to plaintiff of $3,493.60 and this sum is due plaintiff with interest from January 1, 1964.

18. Plaintiff furnished screen door closers and transformers after the guarantee period and under protest; the defendant owes plaintiff the sum of $255.32, with interest from March 20, 1963.

19. Plaintiff repaired spalled sidewalks, under protest, for which work defendant owes plaintiff the sum of $442, with interest from September 20, 1963.

20. Plaintiff incurred the sum of $9,177 for extended overhead occasioned by performing work beyond the contract term, but inasmuch as only 20 percent of this work was on items for which the plaintiff has a right of recovery, the defendant owes plaintiff the sum of $1,835.40, with interest from January 1, 1964.

21. As stated at Finding 15, the plaintiff was responsible for the installation of vibration eliminators and, accordingly, the plaintiff's claim for the installation of the additional vibrator eliminator on the roof shall not be allowed.

22. Plaintiff failed in its responsibility to properly slope the laundry room floors, and its claim for resurfacing same shall not be allowed.

23. It was plaintiff's responsibility to install proper arches and charging gates in proper working condition, and its claim for repairs to same shall not be allowed.

24. Under the contract plaintiff was responsible for the installation of a properly designed and operating electrical control system for the incinerators; accordingly, its claim for the cost of redesign and installation of controls shall not be allowed.

25. Jurisdiction is founded on diversity of citizenship, and the claim of the plaintiff is in excess of $10,000, exclusive of interest and costs.

26. The defendant had no right to withhold any amount as liquidated damages for delay, and defendant owes the plaintiff the sum of $39,900, with interest from October 31, 1961.

## DISCUSSION

Whether the defendant is entitled to withhold $39,900 as liquidated damages for delay is the legal issue involved, the solution of which depends upon the interpretation of Section 13 of the contract.[3]

This section provides in effect that: First—If the Contractor refuses or fails to prosecute the work with diligence or complete the work *"within the time specified* in the Special Conditions * * *"*, the Authority may by written notice *"terminate his right to proceed* with the work * * *"*. (Emphasis supplied.)

In such event the Authority may take over the work and complete it, by a contract or otherwise, and the Contractor and his surety shall be liable for the excess costs occasioned thereby. Second—Until the Authority terminates the right to proceed, the Contractor shall continue the work, and in place of actual damages for the delay, the Contractor shall pay to the Authority as fixed, agreed, and liquidated damages for each calendar day of delay until the work is completed or accepted, or until such time as the Contractor's right to proceed shall be terminated, the amount as set forth in the Special Conditions.

3. Section 13(a) (b) provides:

"a. If the Contractor refuses or fails to prosecute the work, or any separable part thereof, with such diligence as will insure its completion within the time specified in the Special Conditions or any extension thereof, or fails to complete said work within such time, the Local Authority may, by written notice to the Contractor, terminate his right to proceed with the work or such part of the work as to which there has been delay. In such event, the Local Authority may take over the work and prosecute the same to completion, by contract or otherwise, and the Contractor and his sureties shall be liable to the Local Authority for any excess cost occasioned the Local Authority thereby. If the Contractor's right to proceed is so terminated, the Local Authority may take possession of and utilize in completing the work such materials, appliances, and plant as may be on the site of the work and necessary therefor. Until such time as the Local Authority terminates the right of the Contractor to proceed, the Contractor shall continue the work, and the Contractor shall pay to the Local Authority as fixed, agreed and liquidated damages (it being impossible to determine the actual damages occasioned by the delay) for each calendar day of delay, until the work is completed or accepted, or until such time as the Contractor's right to proceed shall be terminated, the amount as set forth in the Special Conditions, and the Contractor and his sureties shall be liable for the amount thereof. In the event the Local Authority shall, at any time subsequent to the date of completion, as established in the Contract or any amendment thereto, terminate the Contractor's right to proceed, such termination shall not relieve the Contractor of the payment of the liquidated damages which have accrued from the completion date as established in the Contract, up to and including the date of the termination of the Contractor's right to proceed; *Provided,* that the right of the Contractor to proceed shall not be terminated or the Contractor charged with liquidated damages because of any delays in the completion of the work due to unforeseeable causes beyond the control and without the fault or negligence of the Contractor including but not restricted to acts of God, or of the public enemy, acts of the Government, acts of the Local Authority, acts of another contractor in the performance of a contract with the Local Authority, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather, or delays of subcontractors due to such causes, if the Contractor shall within 10 days from the beginning of any such delay (unless the Local Authority, with the approval of the PHA, shall grant a further period of time prior to the date of final settlement of the Contract), notify the Contracting Officer in writing of the causes of delay, who shall ascertain the facts and the extent of delay, and the Local Authority shall, subject to prior approval of the PHA, extend the time for completing the work when, in its judgment, the findings of fact of the Contracting Officer justify such an extension, and his findings of fact thereon shall be final and conclusive upon the parties hereto.

"b. No payment or compensation of any kind shall be made to the Contractor for damages because of hindrance or delay from any cause in the progress of the work, whether such hindrances or delays be avoidable or unavoidable."

■ Paragraph 3 "Liquidated Damages" of the Special Conditions provides in part:

"a. As actual damages for any delay in completion are impossible of determination, the Contractor and his Sureties shall be liable for and shall pay to the Local Authority the sum hereinafter stipulated as fixed, agreed and liquidated damages for each calendar day of delay until the work is completed or accepted.

"(1) $300.00 per calendar day * * *."

This provision is not intended to spell out the situations where liquidated damages are to be paid and cannot control the language of Section 13. United States v. American Surety Co., 322 U.S. 96, 99–100, 64 S.Ct. 866, 88 L.Ed. 1158 (1944).

■ The Contractor, United, having failed to complete the work within the specified time, the Authority exercised its option under the first part of Section 13 to terminate United's right to proceed.

Section 13 also provides in effect: In the event the Authority shall *"subsequent to the date of completion"* (emphasis supplied) terminate the Contractor's right to proceed, such termination shall not relieve the Contractor of payment of the liquidated damages *"which have accrued from the completion date"* (emphasis supplied) up to and including the date of termination of the Contractor's right to proceed.

Obviously, this latter provision is not applicable to the facts in the case at bar, since the termination of United's right to proceed took place on November 16, 1960 "within the time specified in the Special Conditions", i. e., prior to October 31, 1961.

Section 13 does not specify what happens with respect to payment of liquidated damages when, as here, United defaulted and stopped work in October, 1960, prior to the specified date of completion, and United's right to proceed was terminated prior to the date of completion. No damages for delay had accrued.

■ In our opinion it is not the function of the court to make the contract for the parties. United States v. American Surety Co., *supra*, 322 U.S. at p. 102, 64 S.Ct. 866. Since the contract as written does not provide that the Authority can recover liquidated damages in the event that United's right to proceed is terminated within the time specified in the Special Conditions, we think the Authority had no contractual right to withhold the sum of $39,900 as liquidated damages for delay and owes the plaintiff-surety that sum with interest.

The Authority had the option in October, 1960, when United stopped work, to engage a new contractor to finish the work and collect the excess cost from the plaintiff-surety. Instead, the Authority demanded that the plaintiff-surety finish the work and undertake the burden of supervision. The plaintiff agreed and promptly engaged Arthur Venneri Company to complete the construction. Since United's right to proceed was terminated prior to the specified date of completion, i. e., October 31, 1961, the Authority had only the right to any excess costs which it succeeded in procuring the plaintiff-surety to absorb.