EDWARD S. SMITH, Circuit Judge.
 

 Imperial Van Lines International, Inc., appeals from the July 28, 1986, order of the United States Claims Court granting the Government’s motion for summary judgment. We affirm.
 

 Issue
 

 The issue in this case is whether the Claims Court erred in holding that Imperial Van Lines International, Inc., is not entitled to ocean rate adjustment compensation for shipments of household goods and unaccompanied baggage shipped from Germany to the United States, routed through England.
 

 Background
 

 Imperial Van Lines International, Inc. (Imperial), is a freight forwarder which participated in the International Through Government Bill of Lading (ITGBL) program for the transportation of household goods and unaccompanied baggage for the Department of Defense between points in the continental United States (CONUS) and points overseas and between points overseas. This program was administered by the Military Traffic Management Command (MTMC).
 

 Under the ITGBL procurement method, a shipment of household goods or unaccompanied baggage belonging to Defense Department personnel is tendered to a freight forwarder for movement from the point of origin to the destination. Thus, in its relationship with the Defense Department, the forwarder is the carrier and the Defense Department is the shipper. The forwarder packs the shipment in a specially designed container, chooses the carriers to be used,
 
 *636
 
 usually including an ocean carrier, and selects the routing of the shipment from origin to destination. In its relationship with the ocean carrier, the forwarder is the shipper and, as such, purchases transportation service from the ocean carrier and pays the ocean carrier’s tariff rates.
 

 MTMC regularly solicits freight forwarders to submit rates applicable to ITGBL shipments of household goods and unaccompanied baggage belonging to military personnel and their dependents. Rates are usually solicited for 6-month procurement periods, known as “Volumes.” Rates submitted by forwarders are single-factor rates applicable to the through transportation of shipments from point of origin to point of destination. These single-factor rates are based, among other things, on the underlying ocean transportation rates in effect on a date established for each Volume period by MTMC, known as the “pegged quotation date.”
 

 If the costs on which the single-factor rate was based increase during the Volume, the forwarder may obtain compensation for those increases. The requirements for an ocean rate adjustment to cover increased ocean transportation costs are that the ocean transportation cost for the particular type of service in the ocean channel has increased more than 2.5 percent after the pegged quotation date, and that the service is no longer available in that ocean channel at the prior rate.
 

 Two of the four shipments involved in this case were moved during Volume 45, which covered shipments tendered during the period beginning October 1, 1982, and ending March 31, 1983. One of the shipments in the Volume 45 period was a Code 4 shipment involving household goods. The other was a Code 7 shipment involving unaccompanied baggage. Volume 46 originally covered shipments tendered during the period beginning April 1, 1983, and ending September 30, 1983, but the period was later extended through October 31, 1983. Both of the Volume 46 shipments were Code 4 shipments involving household goods.
 

 For both the Volume 45 and the Volume 46 periods, Imperial had quoted to MTMC single-factor rates on the movement of Code 4 and Code 7 shipments between various overseas points and CONUS, including rates for the movement of such shipments between points in Germany and points in CONUS, and between points in England or Scotland and points in CONUS. Shipments between England and CONUS were subject to ocean rate adjustments for both Code 4 and Code 7 shipments. These adjustments, which were requested by Imperial, were due to the increased tariffs of ocean carriers for single-container shipments moving from England or Scotland to CONUS.
 

 Each of the four shipments involved here was a single container which was to be shipped from Germany to CONUS. However, in routing these shipments, Imperial did not route the shipments directly from Germany to their ultimate destinations in CONUS. Instead, Imperial first routed each shipment from a port in Germany to Felixstowe, England, where it was off-loaded and combined with other shipments originating from different ports and bound for CONUS. The resulting multiple-container shipment was then reloaded on the same vessel from which the single container had just been unloaded, and routed to CONUS under a multiple-container ocean tariff, which was less than the single-container tariff.
 

 Imperial included in its charges for the shipments involved in this case the ocean rate adjustments previously authorized for single-container shipments from England or Scotland to CONUS. This resulted in a charge substantially in excess of what would have been the cost had Imperial routed the shipment directly from Germany to CONUS on the same ship at the single-container rate.
 

 The General Services Administration (GSA) denied Imperial’s claimed entitlement to the ocean rate adjustments applicable to single-container shipments from England or Scotland to CONUS. Instead, GSA paid Imperial on the basis of the lower rates which Imperial had quoted to MTMC
 
 *637
 
 for single-container shipments routed from Germany to CONUS.
 

 Imperial filed suit in the Claims Court to recover the amounts that GSA deducted from its charges for the four shipments. Imperial now appeals the Claims Court’s grant of summary judgment in favor of the Government.
 

 Standard of Review
 

 In reviewing the grant of summary judgment by the Claims Court, we must determine whether the strict standard set out in RUSCC 56(c), which standard is the same as Fed.R.Civ.P. 56(c), has been met.
 
 [1]
 
 The party appealing the grant of summary judgment must show that the Claims Court erred in determining that, based on “the pleadings and evidence before it,” there was no genuine issue of material fact, and that the moving party was entitled to judgment as a matter of law.
 
 [2]
 

 In this case, there are no factual disputes, so the only question is whether the Government was entitled to judgment as a matter of law.
 

 Applicability of the Ocean Rate Adjustment
 

 As Judge White noted in his opinion, ordinarily the carrier is under a legal obligation to move a shipment using the cheapest available route.
 
 [3]
 
 There are certain exceptions to this rule, such as where the shipper directs the carrier to use a more expensive routing,
 
 [4]
 
 or where it would be unreasonable under the circumstances for the carrier to move the shipment over the cheapest available routing.
 
 [5]
 
 Neither party contends that these exceptions are applicable.
 

 Imperial argues that the rule that the shipper is entitled to the lowest available rate is limited to cases involving transportation regulated by the Interstate Commerce Commission (ICC). Since these shipments would not have been under the jurisdiction of the ICC, Imperial claims the rule does not apply here. Nothing in any of the cases cited requires such a limitation. One of the cases specifically stated that the carrier’s duty to ship using the cheapest available routing was a common law principle.
 
 [6]
 
 Imperial suggests no reason why the rule should be limited to transportation regulated by the ICC, and we can think of none. Therefore, we hold that the rule is not limited to cases where the transportation involved is regulated by the ICC.
 

 Imperial filed only one rate for the shipment of household goods from Germany to CONUS, and only one rate for the shipment of unaccompanied baggage from Germany to CONUS. There was no increase in either of these rates during the period in question. No rate was filed during the period at issue for the shipment of goods from Germany to CONUS through England. Imperial is now attempting to create a second rate for the indirect routing, by claiming the ocean rate adjustment for the England to CONUS leg. It cannot do implicitly what it did not do explicitly by submitting a rate for the indirect routing initially.
 

 The contract called for shipment of the goods from the point of origin, which was Germany, to the point of destination, CO-NUS. Imperial selected the indirect routing through England in order to take advantage of the lower multiple-container rates from England to CONUS and to try to establish a basis on which to claim the ocean rate adjustment, as the Claims Court
 
 *638
 
 found. In these circumstances Imperial was free to ship the goods over the routing it selected. What it could not do was charge the Government a higher rate than that which it had quoted for the shipment from Germany to CONUS.
 

 Even assuming that the indirect routing was contemplated by the parties, a shipper cannot claim an ocean rate adjustment when the rate it actually paid did not increase. Imperial admitted that the shipments in question were shipped at multiple-container, not single-container, rates. The multiple-container rates either did not increase at all or did not increase significantly enough to qualify for an ocean rate adjustment. Therefore, Imperial has no basis on which to claim the ocean rate adjustment for single-container shipments.
 

 Conclusion
 

 As Judge White held, the Government was entitled to the lowest shipping rate available. This rate is the same whether the routing is viewed as direct or indirect, the rate quoted by Imperial for shipment from Germany to CONUS because Imperial had not filed a rate for the indirect routing. Therefore, Imperial is not entitled to the ocean rate adjustment for these shipments. The judgment of the United States Claims Court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 .
 
 See Lemelson v. TRW, Inc.,
 
 760 F.2d 1254 (Fed.Cir.1985).
 

 [2]
 

 .
 
 Glaros v. H.H. Robertson Co.,
 
 797 F.2d 1564 (Fed.Cir.1986),
 
 cert. dismissed,
 
 — U.S.-, 107 S.Ct. 1262, 94 L.Ed.2d 124 (1987).
 

 [3]
 

 .
 
 Northern Pac. Ry. v. Solum,
 
 247 U.S. 477, 38 S.Ct. 550, 62 L.Ed.2d 1221 (1918);
 
 Seaboard Coast Line R.R. v. United States,
 
 412 F.2d 1274, 188 Ct.Cl. 968 (1969).
 

 [4]
 

 .
 
 See Trans Ocean Van Serv. v. United States, 426 F.2d 329 192
 
 Ct.Cl. 75 (1970);
 
 Seaboard Coast Line,
 
 412 F.2d at 1277.
 

 [5]
 

 .
 
 See Northern Pac.,
 
 247 U.S. at 482, 38 S.Ct. at 552;
 
 Seaboard Coast Line,
 
 412 F.2d at 1277.
 

 [6]
 

 .
 
 Northern Pac.,
 
 247 U.S. at 481-82, 38 S.Ct. at 552.