**LOUIS LEUSTEK & SONS,
INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 95–228C.

United States Court of Federal Claims.

Aug. 25, 1998.

Robert H. Magie, III, Duluth, Minnesota, attorney of record, for the plaintiff.

Steven E. Gordon, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, with whom were David M. Cohen, Director, Kirk T. Manhardt, Assistant Director, and Frank W. Hunger, Assistant Attorney General, attorneys of record for the defendant.

## OPINION

HORN, Judge.

This case comes before the court on the defendant's motion for summary judgment filed pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). The plaintiff, Louis Leustek & Sons, Inc., entered into a contract with the defendant, the United States acting through the United States Forest Service (the Forest Service) to construct roads, boat accesses, parking lots and other related items in the Superior National Forest. According to the allegations in the complaint, work commenced on or about October 18, 1989. A suspension of work order was issued by the defendant on November 2, 1989. The plaintiff filed a complaint in this court alleging that the defendant unreasonably suspended work on the contract for an unreasonable amount of time. The plaintiff alleges that the suspension of work caused the plaintiff to incur additional expenses which the defendant is contractually required to pay to the plaintiff as an adjustment for increased costs. The defendant states that the suspension of work was reasonable and was continued for a reasonable amount of time in light of the administrative procedures that were undertaken by the defendant to address the environmental objections to the project which were raised by two homeowners, Dr. and Mrs. Sommers, who lived near the project on which the plaintiff had contracted to work.

## FACTS

Regulations issued pursuant to the National Environmental Policy Act (NEPA) require federal agencies to prepare an "environmental assessment" to "[b]riefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact." 40 C.F.R. § 1508.9(a)(1) (1989).[1] A "Finding of No Significant Impact" is defined in the Code of Federal Regulations as follows: "a document by a Federal agency briefly presenting the reasons why an action, not otherwise excluded (§ 1508.4), will not have a significant effect on the hu-man environment and for which an environmental impact statement therefore will not be prepared." 40 C.F.R. § 1508.13. Federal agencies are directed to:

(a) Make diligent efforts to involve the public in preparing and implementing their NEPA procedures.

(b) Provide public notice of NEPA-related hearings, public meetings, and the availability of environmental documents so as to inform those persons and agencies who may be interested or affected.

40 C.F.R. § 1506.6.

The Forest Service "provides a process by which a person or organization interested in the management of the National Forest System may obtain review of an intended action by a higher level official." 36 C.F.R. § 217.1. An interested person or organization may request that the Forest Service stay the implementation of a project or activity. 36 C.F.R. § 217.10(a). The Forest Service's regulations also provide that "[f]or a period not to exceed 20 days following the filing of a first level notice of appeal, the Reviewing Officer shall accept requests to intervene in the appeal from any interested or potentially affected person or organization." 36 C.F.R. § 217.14(a). The Forest Service's "appeal record is open to public inspection at any time during the review." 36 C.F.R. § 217.15(f).

The plaintiff, Louis Leustek & Sons, Inc., is a Minnesota corporation that is engaged in the business of general construction, road construction and earthwork. "In the spring of 1989, the United States Forest Service decided to proceed upon a project plan for the reconstruction and paving of a major entrance into the Boundary Waters Canoe Area in Northern Minnesota. The project was known as the Moose Lake Road reconstruction and paving project." On May 11, 1989, Roger E. Baker, the United States District Ranger for the Kawishiwi Ranger District, selected a project plan that included paving the Moose Lake landing. District Ranger Baker stated that the projects encompassed by his decision would be integrated into the Moose Lake Road reconstruction

---

1. All citations to the Code of Federal Regulations are from the July 1, 1989 revisions.

and paving project and that these projects did "not constitute a major federal action that would affect the quality of the human environment."

Dr. and Mrs. Sommers are home owners whose property is adjacent to Moose Lake Road. By a letter dated June 12, 1989, the Sommers appealed District Ranger Baker's May 11, 1989 decision pursuant to 36 C.F.R. § 217. Dr. and Mrs. Sommers objected to a number of District Ranger Baker's determinations, including the decision to reconstruct, alter and pave Moose Lake Road and the decisions related to the construction and reconstruction of parking lots in the area. The defendant alleges that the Sommers did not request that the Forest Service stay the project. According to the joint stipulations of fact filed with the court, the plaintiff believes that a request for a stay should have been implied from the objections made in the Sommers' June 12, 1989 letter. On July 27, 1989, Forest Supervisor David A. Filius affirmed the District Ranger's decision on all six points raised in the Sommers' appeal. Forest Supervisor Filius also found that the Sommers' objections were primarily directed at the Moose Lake Road project, and because this project had been approved several years prior to the Sommers' appeal, their appeal was untimely. The Sommers pursued a second level appeal with Regional Forester Floyd J. Marita in a letter dated August 5, 1989. The defendant alleges that the Sommers did not request a stay of the project in their letter to Regional Forester Marita while, as indicated above, the plaintiff believes that a request for a stay should have been implied from the objections in the Sommers' June 12, 1989 letter.

The Forest Service issued a solicitation for work on the Moose Lake Road project on August 22, 1989. On September 29, 1989, the Forest Service awarded the plaintiff contract number 50–63A9–9–4 (the contract).[2] The plaintiff states that "[t]otally unknown to Leustek, the Sommers, nearby residents, had been proceeding with objections to this project since June. Technically, the Sommers had not requested a stay of the project, so

the Government decided to simply proceed with the construction while at the same time processing the Sommers' appeal." Pursuant to the contract as awarded, the plaintiff was required to perform road construction on four independent construction jobs, a base job and three options. The base project consisted of the reconstruction of 3.4 miles of road, while the options consisted of the Moose Lake Boat/Canoe access; reconstruction of 0.8 miles of the Ojibway Lake Road, boat access and parking lot; and the Secret/Blackstone Lake Access Road.

The contract included a suspension of work clause, 48 C.F.R. § 52.212–12, which stated:

(a) The Contracting Officer may order the Contractor, in writing, to suspend, delay, or interrupt all or any part of the work of this contract for the period of time that the Contracting Officer determines appropriate for the convenience of the Government.

(b) If the performance of all or any part of the work is, for an unreasonable period of time, suspended, delayed, or interrupted (1) by an act of the Contracting Officer in the administration of this contract, or (2) by the Contracting Officer's failure to act within the time specified in this contract (or within a reasonable time if not specified), an adjustment shall be made for any increase in the cost of performance of this contract (excluding profit) necessarily caused by the unreasonable suspension, delay, or interruption, and the contract modified in writing accordingly. However, no adjustment shall be made under this clause for any suspension, delay, or interruption to the extent that performance would have been so suspended, delayed, or interrupted by any other cause, including the fault or negligence of the Contractor, or for which an equitable adjustment is provided for or excluded under any other term or condition of this contract.

(c) A claim under this clause shall not be allowed (1) for any costs incurred more than 20 days before the Contractor shall have notified the Contracting Officer in writing of the act or failure to act involved (but this requirement shall not apply as to

---

**2.** The plaintiff's complaint incorrectly states that the contract was awarded in 1988; the parties later stipulated that the contract was awarded in 1989.

a claim resulting from a suspension order), and (2) unless the claim, in an amount stated, is asserted in writing as soon as practicable after the termination of the suspension, delay, or interruption, but not later than the date of final payment under the contract.

On October 19, 1989, the Forest Service issued a notice to proceed for the base job and option 2. The notice to proceed for option 1 and option 3 was not issued until November 2, 1989. The plaintiff was to complete all work on all of the options by October 15, 1991. The plaintiff alleges that the plaintiff met with the Forest Service on October 19, 1989 for a pre-work meeting in which the plaintiff was cautioned that it was essential that the project be completed in a timely manner. Moreover, the plaintiff states that it was warned in the October 19, 1989 pre-work meeting that failure to complete the project in a timely fashion could lead to the assessment of damages against the plaintiff and that this warning was later confirmed in writing.

On October 25, 1989, Albert Leustek, President of Louis Leustek & Sons, Inc., submitted the following progress schedule to the Contracting Officer's Representative, Lori McIntyre, pursuant to the "Schedules for Construction Contracts" clause in the contract:

*Moose Lake Road*

Clearing & Grubbing—Begin Oct. 23, 1989—complete Nov. 10, 1989

Common Excavation—Begin Oct. 25, 1989—End Nov. 30, 1989

Large Span Pipe—Begin Oct. 30, 1989—complete Nov. 7, 1989

Pit Development—Begin Oct. 23, 1989—complete Oct. 27, 1989

*Ojibway Lake Road*

Clearing & Grubbing—Begin Nov. 15, 1989—complete Nov. 30, 1989

Remainig [sic] work after this calendar year will commence on or about May 1st, 1990 depending on weather and/or ground conditions at that time.

The plaintiff alleges that it began work on the project on October 23, 1989. The plaintiff further states that, when it bid on and planned the project, it contemplated:

that nearly all of the excavation, blasting, and gravel. base work would be accomplished in the late fall and early winter months of 1989–90. This was essential to a cost-effective completion of the project because of the low traffic count and ideal working conditions at that time of year.

Dr. and Mrs. Sommers wrote the Forest Service on October 15, 1989 to express concern that the contract for work on the Moose Lake Road, trailhead parking lot and lake access project had been awarded despite their appeal. Regional Forester Marita wrote the Sommers on October 26, 1989 to explain that work on the construction contracts had gone forward because, although the Sommers had filed an appeal of the Forest Supervisor's decision, they had not requested a stay of the project. The Sommers then submitted further objections to the Forest Service stating that they "would certainly expect no reconstruction action to begin without the decision being made for the necessity of this action." (emphasis in original).

On November 2, 1989, the Sommers and District Ranger Baker, acting on behalf of the Forest Service, entered into a settlement agreement in which the Forest Service agreed to suspend construction on a portion of the plaintiff's contract pending "a site-specific Environmental Assessment for the Moose Lake Road Reconstruction Project in a timely manner, with appropriate public involvement and consideration of a full range of road design alternatives." The Sommers agreed to dismiss their appeal to Regional Forester Marita, without prejudice.

Randy Lloyd, the Contracting Officer, issued a partial stop work order on the same day, November 2, 1989, that affected two of the four project segments. Also on November 2, 1989, Contracting Officer Lloyd issued a notice to proceed for option 1 and option 3 and work began on those two project segments. However, as later described by the Contracting Officer in his second Final Decision, "[a]ll work on Option 1 was allowed to proceed with the exception of earthwork, grading, and incidental work associated with the parking lot construction. This was to

allow the Government time to have the Forest Landscape Architect to review the parking lot configuration."

The plaintiff alleges that "Leustek was not involved in the negotiations between the Forest Service and the Sommers, and Leustek never even knew about the negotiations with the Sommers." Moreover, according to the plaintiff, by November 2, 1989, it "had mobilized equipment to the site and was organized and ready to work. The Forest Service gave Leustek no indication as to when work was likely to resume. Leustek's equipment remained on the project site, idle, until the first week of December 1989." The plaintiff further alleges that its work force remained idle and that the plaintiff was unable "to redeploy to any other project."

> According to the Contracting Officer:
>
> Work progressed on the project until December 4, 1989, when the Contractor removed his equipment from the site. The contractor resumed work on the Ojibway road, Option 2, on or about April 26, 1990. Work progressed on Option 2 until it was completed except for seeding and mulching. This was on or about May 14, 1990. Then Contractor left the site again.

The Forest Service began the process of preparing a new environmental assessment. The Forest Service sent a scoping letter [3] to over sixty individuals and organizations on December 19, 1989 and held a public meeting regarding the issues raised by Dr. and Mrs. Sommers on January 9, 1990. After reviewing the public comments and disclosing the environmental assessment of the proposed action and the identified alternatives, District Ranger Baker issued a new decision notice on February 21, 1990. District Ranger Baker's February 21, 1990 decision concluded in part "that this project does not constitute a major federal action that would significantly affect the quality of the human environment. Therefore an environmental impact statement is not required."

The Sommers filed a first level appeal from District Ranger Baker's February 21, 1990 decision with Forest Supervisor Filius on March 19, 1990 pursuant to 36 C.F.R. § 217.[4] According to 36 C.F.R. § 217.15(a), upon receiving a copy of the Sommers' notice of appeal of his decision, District Ranger Baker had thirty (30) days in which to forward to Forest Supervisor Filius, the Reviewing Officer, "the relevant decision documentation" and "pertinent records." Forest Supervisor Filius received District Ranger Baker's documentation on April 11, 1990. Forest Supervisor Filius was required to wait until the record closed before issuing a decision. 36 C.F.R. § 217.16(a). The record closed on April 11, 1990 when Forest Supervisor Filius received District Ranger Baker's documentation. 36 C.F.R. § 217.15(e)(2). Forest Supervisor Filius was required to issue a decision "not more than 100 days from the date the notice of appeal was filed." 36 C.F.R. § 217.8(e)(1). Although Forest Supervisor Filius was permitted 100 days to review District Ranger Baker's decision, he issued a decision affirming District Ranger Baker's decision on April 16, 1990, twenty-eight (28) days after the Sommers filed their appeal and five (5) days after the appeal record closed.

In a letter dated April 28, 1990, Dr. and Mrs. Sommers filed an appeal with Regional Forester Marita, which was received by the Forest Service on May 2, 1990. On May 3, 1990, the Sommers were notified that a second level review would be conducted by a letter that stated in part:

> The appeal record was received in this office on April 19. The second level review will be conducted on the existing file and no additional information will be added to the file.
>
> Although a stay was not requested by you, the Forest Supervisor has suspended contract work until the second level review

---

**3.** As defined by the defendant, a "scoping letter" is a letter that is addressed to the public to elicit public comment.

**4.** The court did not receive a complete copy of the Sommers' March 19, 1990 letter. While the letter was referred to by the parties in their joint stipulation of facts as attached at appendix pages 30–35, pages 31–36 of the appendix to the joint stipulations of fact were omitted in the filing with the court. This omission, however, is not material to the court's decision on the defendant's motion for summary judgment.

has been completed, but not longer than May 29. With this in mind, the appeal record is closed and a decision will be issued by May 29.

Regional Forester Marita was required to conclude his review of the matter "within 30 days of the date of notice issued to participants that the lower level decision will be reviewed...." 36 C.F.R. § 217.17(f). Regional Forester Marita issued a decision affirming Forest Supervisor Filius' decision on May 29, 1990. Regional Forester Marita's decision stated that "[a]fter reviewing the appeal record, it is my decision to affirm Forest Supervisor Dave Filius' April 16 decision to reconstruct Moose Lake Road. This decision constitutes the final administrative determination of the Department of Agriculture in accordance with 36 C.F.R. § 217.7(e)(3)."

The Sommers appealed the Regional Forester's decision to the Chief of the Forest Service. However, pursuant to 36 C.F.R. § 217.7(e)(3), after receiving Regional Forester Marita's decision, the Sommers had exhausted their administrative remedies within the United States Department of Agriculture. The pertinent regulation states:

A Regional Forester's decision on a second-level appeal constitutes the final administrative determination of the Department of Agriculture on the appeal and is not subject to discretionary review by a higher level officer under the subpart.

36 C.F.R. § 217.7(e)(3). Thus, despite the fact that the Sommers had appealed the Regional Forester's decision, Contracting Officer Lloyd signed a resume work order on May 31, 1990 that was effective the next day, June 1, 1990. Contracting Officer Lloyd stated in his resume work order that the time charged during the period of partial suspension was 210 calendar days. The plaintiff notes in its response to the defendant's motion for summary judgment that the suspension of work lasted for seven months. The defendant argues that the plaintiff's statement that the partial suspension of work lasted for seven months is misleading because the plaintiff had planned to stop work on the project "from November 30, 1989 through at least May 1, 1990, due to the severe winter weather in northern Minnesota." Thus, the defendant states that "at worst" the suspension of work "prevented Leustek from working upon a portion of the project for approximately eight weeks (November 2–30, 1989 and May 1–31, 1990)."

The Contracting Officer noted that the "[c]ontractor resumed work on or about July 2, 1990, and continued through the construction season." The plaintiff alleges that it performed work on the project during the summer and fall of 1990 and that, during that time, the plaintiff was working:

under entirely different conditions from those anticipated by Leustek at the time of bidding on the contract. Leustek claims that it has sustained compensable damages because of the greater expense in performing the work and because of the periods during which its equipment remained idle at the job site due to the suspension of work order by the Forest Service.

According to the plaintiff, "Leustek was required to complete the work during the busy tourist season at a tremendous increase in cost to Leustek." The plaintiff completed all work on the project on June 20, 1991, almost four months prior to the scheduled date for completion of work on the project, October 15, 1991.

Albert Leustek, the plaintiff's President, filed a claim with the Contracting Officer on December 27, 1989 for lost revenues in the amount of $118,735.15. The claim was not certified in accordance with the Contract Disputes Act (CDA), 41 U.S.C. §§ 601–613 (1988). The Contracting Officer returned the claim to Mr. Leustek on January 19, 1990 because it did not comply with the CDA. On June 5, 1990, the Contracting Officer received a revised claim from Mr. Leustek for "damages for idled equipment in the amount $64,646.98 per month. The claim was not properly certified by Albert Leustek." By letter dated August 10, 1990, the Contracting Officer again requested that Mr. Leustek quantify the claims as to a sum certain. Mr. Leustek then submitted a letter to the Contracting Officer on August 14, 1990 which "quantified his claim as being a total claim for idled equipment in the amount of $289,-618.47." Further correspondence, telephone

calls and a meeting on December 13, 1990 between the plaintiff and the Contracting Officer proved to be unsuccessful in resolving the plaintiff's claims.

The Contracting Officer issued his first Final Decision on February 14, 1991. The Contracting Officer denied the balance of the claim, but the plaintiff was awarded $15,434.62. The plaintiff then filed suit in the United States Claims Court, Case No. 92–68, on January 29, 1992 for $200,000.00. The plaintiff filed an amended complaint that included a claim for "changed character of the work" in addition to the idle equipment claim that had been filed with the Contracting Officer and which was alleged in its initial complaint. In Case No. 92–68, the defendant filed a motion to dismiss on August 19, 1993 for lack of subject matter jurisdiction. The parties then filed a joint stipulation for dismissal, without prejudice, pursuant to RCFC 41(a)(1)(B) on December 29, 1993.

Thereafter, the plaintiff filed a certified claim with the Contracting Officer on or about June 20, 1994 for $404,751.90. The claim submitted to the Contracting Officer was a two-part claim: $139,443.29 for equipment that was allegedly idled by the suspension of work and $265,308.61 for the changed character of the work.

The previous Final Decision issued by the Contracting Officer on February 14, 1991 had addressed solely the idle equipment costs claim. In the certified June 20, 1994 two-part claim, the plaintiff relied on a consultant's report that the plaintiff had not previously submitted to the Contracting Officer. In his second Final Decision, the Contracting Officer denied the plaintiff's June 20, 1994 claim for idle equipment costs, writing in part:

> In regards to this part of the claim I am of the opinion, that idle equipment damages are relevant only when the contractor can show that the equipment could have been employed on another contract, but was instead reasonable [sic] and necessarily set aside and awaiting use for performance on the delayed/suspended contract. If the contractor has no use for the equipment on other work, the contractor has not foregone a loss of revenue under the suspen-

sion, and would not have incurred financial damages. Therefore, contractor's total for idle equipment of $139,443.29 is denied.

The Contracting Officer also denied the plaintiff's claim for "changed character of the work" costs, which were described as "alleged significant extra costs incurred by Leustek in performing work during the Summer of 1990, rather than in the off-season periods during the Fall of 1989 and Spring of 1990." The Contracting Officer noted in his second Final Decision that, after the June 1, 1990 resume work order was issued, he specifically asked the plaintiff whether the plaintiff planned to resume work immediately or in the fall after the summer tourist traffic had subsided. The Contracting Officer also indicated in his letter that either time was permissible. *See infra* note 6. The Contracting Officer determined that "[b]ecause it was Leustek's decision to work during this period, it is my opinion that any increased costs caused by loss of productivity should be borne by Leustek. Therefore, Contractor [sic] claim for 'changed condition of the work' for and [sic] amount of $265,308.61 is denied." Thus, the Contracting Officer denied the plaintiff's June 20, 1994 two-part claim for $404,751.90 in full.

The plaintiff filed its second complaint in this court on March 13, 1995, Case No. 95–228C, alleging that the suspension of work was not caused or contributed to by the plaintiff and that it was unreasonable and had lasted for an unreasonable amount of time. The plaintiff stated in its complaint that the "suspension of work directly and necessarily caused the Plaintiff to incur additional costs in the full performance of said contract, which additional costs are damages incurred by the Plaintiff. The Plaintiff was otherwise directly damaged by this suspension of work." The plaintiff claims that the contract, particularly the suspension of work clause (48 C.F.R. § 52.212–12), requires the defendant to pay the plaintiff an adjustment for the increased costs that were necessarily caused by the suspension order. In the above-captioned case, Case No. 95–228C, the plaintiff is seeking damages in the amount of $404,751.90, plus interest and reasonable costs and attorney fees.

The defendant filed an answer to the plaintiff's complaint on July 11, 1995 and then filed a motion for summary judgment on March 28, 1997. The defendant's motion for summary judgment states that, pursuant to the suspension of work clause, the amount of time that the Forest Service partially suspended the work was reasonable in light of the administrative procedures that were required to address the Sommers' environmental objections. The plaintiff responded to the defendant's motion for summary judgment on April 29, 1997 and stated that the amount of time that the project was suspended was unreasonable and that it is irrelevant that the government may have acted quickly under the circumstances because the consequences to the plaintiff were "drastic." The defendant filed a reply to the plaintiff's response to the defendant's motion for summary judgment on May 23, 1997 which stated that summary judgment in its favor is appropriate because the plaintiff has failed to prove that the partial suspension of work was for an unreasonable amount of time.

The defendant believes that the sole issue of law presented by its motion for summary judgment is:

Whether the United States is entitled to summary judgment upon Leustek's complaint because pursuant to the suspension of work clause of the contract at issue, work upon the road construction project was suspended for a reasonable duration in light of the amount of time the Forest Service required to review the environmental objection filed by residents living along the road.

The plaintiff believes that the issue of law to be resolved is: "[w]hether, as a matter of law, the performance of the government contact was not suspended, delayed, or interrupted for an unreasonable period of time by the suspension of work order issued by the contracting officer on November 2, 1989."

## DISCUSSION

The defendant in the above-captioned case has filed a motion for summary judgment. Summary judgment in this court should be granted only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56 is patterned on Rule 56 of the Federal Rules of Civil Procedure (Fed.R.Civ. P.) and is similar both in language and effect.[5] Both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

RCFC 56(c) provides that in order for a motion for summary judgment to be granted, the moving party bears the burden of demonstrating that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Creppel v. United States*, 41 F.3d 627, 630–31 (Fed.Cir.1994); *Meyers v. Asics Corp.*, 974 F.2d 1304, 1306 (Fed.Cir.1992); *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. 674, 679 (1990), *aff'd*, 944 F.2d 885 (Fed.Cir.1991); *Rust Communications Group, Inc. v. United States*, 20 Cl.Ct. 392, 394 (1990). Disputes over facts which are not outcome determinative under the governing law will not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury [trier of fact] could return a verdict for the nonmoving party." *Id.* *see also Uniq Computer Corp. v. United States*, 20 Cl.Ct. 222, 228–29 (1990).

---

**5.** In general, the rules of this court are patterned on the Federal Rules of Civil Procedure. Therefore, precedent under the Federal Rules of Civil Procedure is relevant to interpreting the rules of this court, including RCFC 56. *See Jay v. Secretary DHHS*, 998 F.2d 979, 982 (Fed.Cir.1993); *Imperial Van Lines Int'l, Inc. v. United States*, 821 F.2d 634, 637 (Fcd.Cir.1987); *Lichtefeld–Massaro, Inc. v. United States*, 17 Cl.Ct. 67, 70 (1989).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249, 106 S.Ct. 2505; *see, e.g., Cloutier v. United States*, 19 Cl.Ct. 326, 328 (1990), *aff'd*, 937 F.2d 622 (Fed.Cir.1991). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250–52, 106 S.Ct. 2505. When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the nonmoving party cannot present evidence to support its case under any scenario, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings.

If, however, the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. *Id.; see also Litton Indus. Prods., Inc. v. Solid State Sys. Corp.*, 755 F.2d 158, 163 (Fed.Cir.1985); *H.F. Allen Orchards v. United States*, 749 F.2d 1571, 1574 (Fed.Cir.1984), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985).

The initial burden on the party moving for summary judgment, to produce evidence showing the absence of a genuine issue of material fact, may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. at 679. If the moving party makes such a showing, the burden then shifts to the nonmoving party to demonstrate that a genuine factual dispute exists by presenting evidence which establishes the existence of an element of its case upon which it bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. at 322, 106 S.Ct. 2548; *Lima Surgical Assocs., Inc. Voluntary Employees' Beneficiary Ass'n Plan Trust v. United States*, 20 Cl.Ct. at 679.

Pursuant to RCFC 56, a motion for summary judgment may succeed whether or not accompanied by affidavits and/or other documentary evidence in addition to the pleadings already on file. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. 2548. Generally, however, in order to prevail by demonstrating that a genuine issue for trial exists, the nonmoving party will need to go beyond the pleadings by use of evidence such as affidavits, depositions, answers to interrogatories and admissions. *Id.*

The fact that both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, does not relieve the court of its responsibility to determine the appropriateness of summary disposition in the particular case. *Prineville Sawmill Co., Inc. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." *LewRon Television, Inc. v. D.H. Overmyer Leasing Co.*, 401 F.2d 689, 692 (4th Cir.1968), *cert. denied*, 393 U.S. 1083, 89 S.Ct. 866, 21 L.Ed.2d 776 (1969); *see also Levine v. Fairleigh Dickinson Univ.*, 646 F.2d 825, 833 (3d Cir.1981); *Home Ins. Co. v. Aetna Casualty & Sur. Co.*, 528 F.2d 1388, 1390 (2d Cir.1976). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other is necessarily justified. *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir.1968); *Bataco Indus., Inc. v. United States*, 29 Fed.Cl. 318, 322 (1993), *aff'd*, 31 F.3d 1176 (Fed.Cir.1994). The court must evaluate each party's motion on its own merit, taking care to draw all reasonable

inferences against the party whose motion is under consideration. *Mingus Constructors, Inc. v. United States,* 812 F.2d at 1391.

In the above-captioned case, the parties have filed extensive joint stipulations of fact and the defendant states that no genuine issue as to any material fact exists and that summary judgment is therefore appropriate. Moreover, no issues have been identified by either party or by the court which raise material issues of disputed fact. Thus, the court determines that this case is ripe for summary disposition.

The defendant argues in its motion for summary judgment that the plaintiff cannot establish that the Forest Service's suspension of work was for an unreasonable length of time because the Forest Service processed the Sommers' environmental objections and appeals in a timely manner. The government also states that the Forest Service's regulations that are published in the Code of Federal Regulations give time periods within which the agency must process environmental objections and appeals, and that these time periods provide guidance for whether the duration of the suspension was reasonable. The defendant states that, in processing the Sommers' objections and appeals, the Forest Service officials met each regulatory deadline and, in many cases, completed their work in advance of the requisite regulatory deadline. As an example, the defendant cites the work of Forest Supervisor Filius who, when reviewing the decision of District Ranger Baker, could have taken 100 days to issue a decision pursuant to 36 C.F.R. § 217.8(e)(1). However, Forest Supervisor Filius issued his decision twenty-eight (28) days after the Sommers filed their appeal of District Ranger Baker's decision. Similarly, after the Sommers appealed Forest Supervisor Filius' decision to Regional Forester Marita on April 28, 1990, Regional Forester Marita could have taken thirty (30) days to complete his review of Forest Supervisor Filius' decision pursuant to 36 C.F.R. § 217.17(f). Regional Forester Marita issued his decision affirming Forest Service Filius' decision on May 29, 1990, twenty-seven (27) days after receiving the appeal. Similarly, the government notes that Con-tracting Officer Lloyd issued a resume work order immediately after the Sommers' appeal rights had been exhausted. Thus, because the Forest Service officials acted promptly and within the deadlines that are established by their regulations, the government argues that the duration of the suspension of work was reasonable.

In its motion for summary judgment, the government also argues that the suspension of work only involved two of the four project segments and,

> was primarily during a time period when Leustek had planned to cease work due to inclement weather that is typical in northern Minnesota, and the stop work order did not prevent Leustek from completing the project within the contractually required time period.... Additionally, according to Leustek's own progress schedule, which the company submitted to the Forest Service pursuant to the Schedule for Construction Contract clause, Leustek was to cease all work by November 30, 1989, at the latest, and restart work "on or about May 1st 1990 depending on weather and/or ground conditions at that time." Moreover, Leustek completed work upon the project on June 20, 1991, approximately four months ahead of the scheduled completion date.

(citations omitted). In sum, the defendant states that "the suspension of work order was for a reasonable period of time and that the plaintiff should have expected the possibility of such an order."

The plaintiff argues in its response to the defendant's motion for summary judgment that the suspension of work was for an unreasonable amount of time, but never specifically states what a reasonable amount of time under the circumstances would have been. Instead, the plaintiff cites *Law v. United States,* 195 Ct.Cl. 370, 384–85 (1971), for the proposition that the length of the suspension is meaningful only in relation to the effect that the suspension "had on the project operations ... one month or even less might be unreasonable." Moreover, the plaintiff finds significance in the fact that, in the instant case, the plaintiff did not know how long the suspension of work would last. The plaintiff

states that it had to be ready to proceed at any time, within ten (10) days, after the defendant lifted the suspension.[6] The plaintiff further alleges that "the fact that the government may have moved reasonably quickly is meaningless because the consequences to Leustek were drastic." The plaintiff alleges that the suspension of work clause that was included in the contract between the plaintiff and the defendant requires the defendant to pay the plaintiff "an adjustment for increased costs in the performance of the contract necessarily caused by the suspension order."

The government, in its reply to the plaintiff's response, states that the plaintiff's argument that the suspension of work must have been unreasonable because the partial suspension had an effect upon the company's operations is without merit because, according to the defendant, "the applicable standard is whether the USFS took more time to review the Sommers' environmental objection and appeals than permitted by the USFS's regulations...."

■ The suspension of work clause that was included in the contract between the parties is a standard clause in government contracts and is found at 48 C.F.R. § 52.212–12.[7] *See Sergent Mechanical Sys., Inc. v. United States*, 34 Fed.Cl. 505, 526 (1995), *appeal dismissed*, 91 F.3d 165 (Fed.Cir. 1996). "[T]he Suspension clause contemplates equitable adjustments for unreasonable delays in the performance of the contract." *Triax–Pacific v. Stone*, 958 F.2d 351, 354 (Fed.Cir.1992); *see, e.g., Sergent Mechanical Sys., Inc. v. United States*, 34 Fed. Cl. at 526; *Commercial Contractors, Inc. v. United States*, 29 Fed.Cl. 654, 661 (1993)(citing *Chaney & James Constr. Co. v. United States*, 190 Ct.Cl. 699, 421 F.2d 728 (1970)); *Hvac Constr. Co., Inc. v. United States*, 28 Fed.Cl. 690, 693 (1993); *CCM Corp. v. United States*, 20 Cl.Ct. 649, 657 (1990)(citing *Chaney & James Constr. Co. v. United States*, 190 Ct.Cl. 699, 421 F.2d 728 (1970) and *Beauchamp Constr. Co., Inc. v. United States*, 14 Cl.Ct. 430, 436–37 (1988)). "Adjustments are allowed under the clause only to the extent that a delay is caused by the government's action or inaction; to the extent a delay is caused by the fault or negligence of the contractor, no adjustment is warranted." *Sergent Mechanical Sys., Inc. v. United States*, 34 Fed.Cl. at 526.

■ Both parties correctly cite *John A. Johnson & Sons, Inc. v. United States*, 180 Ct.Cl. 969, 986 (1967), for the proposition that, in order to recover under the suspension of work clause, the plaintiff must prove that: (1) contract performance was delayed; (2) the government directly caused the delay; (3) the delay was for an unreasonable length of time; and (4) the delay injured the plaintiff in the form of additional expense or loss. *See, e.g., Melka Marine, Inc. v. United States*, 38 Fed.Cl. 545, 546 (1997); *Commercial Contractors, Inc. v. United States*, 29 Fed.Cl. at 661–62; *CCM Corp. v. United States*, 20 Cl.Ct. at 658; *River Constr. Corp. v. United States*, 159 Ct.Cl. 254, 270 (1962). "The burden of proof is upon the contractor to establish that defendant did in fact cause delay, and further that any delay adversely affected the project, entitling the plaintiff to an equitable adjustment." *Commercial Contractors, Inc. v. United States*, 29 Fed.Cl. at 662; *see CCM Corp. v. United States*, 20 Cl.Ct. at 658. Thus, the plaintiff is not entitled to an award of damages unless it can

---

6. The government states that "Leustek's contention that the company was required to proceed within *ten days of the USFS* [United States Forest Service] lifting the suspension order is incorrect." Rather, according to the government, the ten (10) days to begin work requirement applied only after the notice to proceed had been issued by the Forest Service. Contracting Officer Lloyd, in a May 31, 1990 letter to the plaintiff that was included with the resume work order, asked:

> Is it your intention to start back immediately now the resume has been issued, or do you plan to wait until late fall after traffic has subsided? Either time is permissible with me but do understand contracting time does begin to count again starting with the June 1, 1990 effective date.

7. The government has implemented provisions such as the *suspension of work clause* in its contracts "in order to avoid liability for breach of contract when effecting contract modifications, which inevitably arise." Steven J. Weber, Heidi B. Hering & Michele Mintz, *The Recoverability of the Cost of Borrowing in Construction Contracts*, 27 Pub. Cont. L.J. 17, 31 (1997).

prove that it suffered monetary injury as a result of a particular compensable act or omission by the defendant. *CCM Corp. v. United States,* 20 Cl.Ct. at 658. The suspension of work clause does not define what constitutes a reasonable or unreasonable period of delay. *De Matteo Constr. Co. v. United States,* 220 Ct.Cl. 579, 589, 600 F.2d 1384, 1390 (1979); *see, e.g., Commercial Contractors, Inc. v. United States,* 29 Fed.Cl. at 662; *CCM Corp. v. United States,* 20 Cl.Ct. at 658. "Whether a particular delay is reasonable or not depends upon the circumstances of the particular case." *Commercial Contractors, Inc. v. United States,* 29 Fed.Cl. at 662 (citing *Tri–Cor, Inc. v. United States,* 198 Ct.Cl. 187, 221, 458 F.2d 112 (1972)); *CCM Corp. v. United States,* 20 Cl.Ct. at 658 (citing *Tri–Cor, Inc. v. United States,* 198 Ct.Cl. 187, 221, 458 F.2d 112 (1972)). If the plaintiff can prove that a government-caused suspension delayed the performance of any part of the contract for an unreasonable length of time and increased costs, the plaintiff can recover under the suspension of work clause. *Commercial Contractors, Inc. v. United States,* 29 Fed.Cl. at 662 (citing *Chaney & James Constr. Co. v. United States,* 190 Ct.Cl. at 713, 421 F.2d at 736).

■ Of the four factors discussed above in *John A. Johnson & Sons, Inc. v. United States,* 180 Ct.Cl. at 986, regarding whether a plaintiff is entitled to recover under a suspension of work clause, the defendant's motion for summary judgment questions only whether the delay under the suspension of work clause was for an unreasonable length of time. Thus, in the case at bar, of these factors, the sole issue raised for the court's consideration is whether the delay that was caused by the suspension of work lasted for an unreasonable length of time and, therefore, is one for which the plaintiff should be compensated.

In support of its allegation that the suspension of work was unreasonable, the plaintiff offers the following reasons: the plaintiff had already been given a notice to proceed and was contractually compelled to begin work within ten days thereafter; the Forest Service should have advised the plaintiff of the Sommers' objections to the project; the

plaintiff reasonably could have assumed that the Sommers' failure to request a stay of the project would keep the Sommers from later being able to stop work on the project; the defendant did not involve the plaintiff in the discussions with the Sommers in which the project was suspended; the plaintiff should not be charged with the business risk "that the Government will voluntarily agree with a citizen to suspend a project that the Government does not have to suspend;" and that the plaintiff was not told the length of the suspension of work and had to be ready to proceed within ten (10) days after the defendant lifted the suspension.

The plaintiff's contention that it had to begin work on the project within ten (10) days after the suspension of work was lifted by the Contracting Officer is factually incorrect. As stated previously, Contracting Officer Lloyd told the plaintiff in a May 31, 1990 letter that was included with the resume work order that the plaintiff could choose to resume work either immediately or in the fall after the traffic had subsided. *See supra* note 6. In fact, the Contracting Officer stated that the plaintiff did not resume work until on or about July 2, 1990, one month after the resume work order was effective. Thus, the court need not consider this contention in determining whether the delay caused by the suspension of work was unreasonable.

The plaintiff also argues that the suspension of work was unreasonable because "the Forest Service should have advised Leustek about the particular protest of the Sommers rather than leaving Leustek to assume (justifiably, we say) that no such protest had been made." Perhaps the Forest Service should have notified the plaintiff about the Sommers' protest. However, the government's failure to notify the plaintiff of a protest is not a factor in determining whether a delay caused by a suspension of work was unreasonable. According to *John A. Johnson & Sons, Inc. v. United States,* 180 Ct.Cl. at 986, and the cases that follow that decision, including those cited above, the plaintiff must prove that the delay was for an unreasonable length of time. The defendant's failure to tell the plaintiff about the Sommers' protest

did not cause the delay to last for an unreasonable period of time.

Moreover, as the plaintiff admits, "[a]t the time of bidding, one can say that Leustek was charged with knowledge of the possibility that a citizen might protest the project." The regulations under which the Sommers filed their initial protest of District Ranger Baker's decision and their subsequent appeals to Forest Supervisor Filius and Regional Forester Marita were included in Title 36 of the Code of Federal Regulations that was in effect in 1989 when the incidents that gave rise to the instant case first occurred. The Code of Federal Regulations is a codification of the Federal Register. 44 U.S.C. § 1510(b) (1988). Generally, publication in the Federal Register "is sufficient to give notice of the contents of the document to a person subject to or affected by it." 44 U.S.C. § 1507 (1988). Moreover, the United States Supreme Court has written that "[j]ust as everyone is charged with knowledge of the United States Statutes at Large, Congress has provided that the appearance of rules and regulations in the Federal Register gives legal notice of their contents. 49 Stat. 502, 44 U.S.C. § 307." *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384–85, 68 S.Ct. 1, 92 L.Ed. 10 (1947). Similarly, this court's predecessor, the United States Court of Claims, noted that "[p]ublication of rulings and regulations in the Federal Register is notice to all of the world." *Lynsky v. United States*, 130 Ct.Cl. 149, 153, 126 F.Supp. 453, 455 (1954). In another case, the United States Court of Claims wrote that:

> It is well settled that when regulations are published in the Federal Register they give legal notice of their contents to all who may be affected thereby. *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947); Federal Register Act of 1935, 49 Stat. 500, 502, 44 U.S.C. § 1507. This court has recognized this principle on several occasions. *See, e.g., Coat Corp. of America v. United States*, 123 Ct.Cl. 176, 196, 105 F.Supp. 832, 834 (1952); *Lynsky v. United States*, 130 Ct.Cl. 149, 153, 126 F.Supp. 453, 456 (1954).

*Wolfson v. United States*, 204 Ct.Cl. 83, 94, 492 F.2d 1386, 1392 (1974). Thus, the defendant reasonably could have assumed that the plaintiff was aware that an individual or a group such as the Sommers could file a formal administrative protest of the construction project with the Forest Service. Even the plaintiff, as quoted above, admits in its response to the defendant's motion for summary judgment that the defendant did not have a legal duty to inform the plaintiff of the Sommers' protest.

The plaintiff also states that its claim that the suspension of work was unreasonable is compelling because "Leustek could have correctly assumed that the failure of the Sommers to request a stay of the project would be fatal to the Sommers ability to force a suspension later on. After all, this is how the Government initially viewed the situation." The plaintiff's argument fails for two reasons. First, as stated previously, because the defendant's policies for handling environmental objections and appeals were published in the Code of Federal Regulations, the plaintiff was expected to be aware of the defendant's policies for handling environmental objections and appeals to its projects. Thus, the plaintiff should have known that a stay could be granted after work on the project began. *See* 36 C.F.R. § 217.10. Similarly, the plaintiff should have known that the Forest Service's regulations gave the defendant the authority to enter into settlement negotiations, such as those that occurred with the Sommers, and as a part of which the defendant could agree to stay the project. *See* 36 C.F.R. § 217.12. Thus, the plaintiff should not have assumed that the Sommers' failure to request a stay of the project initially would have been fatal to the issuance of a stay of the project later.

Moreover, even if the plaintiff reasonably could have assumed that the Sommers' failure to request a stay of the project initially would have prohibited a stay of the project from being issued, this assumption in no way relates to the reasonableness of the length of the suspension of work. As stated above, the plaintiff needs to prove that the delay caused by the suspension of work was for an unreasonable length of time. *See John A. Johnson & Sons, Inc. v. United States*, 180 Ct.Cl. at

986. That the plaintiff thought that the Sommers would not be able to have the project stayed once work on the project began does not relate to the reasonableness of the stay itself.

The plaintiff also alleges that "[t]he Government voluntarily agreed with the Sommers to suspend the project, without involving Leustek in the discussions. It would seem that the government chose to favor the interests of the Sommers, even if it meant having to compensate Leustek for the damages it would sustain by the delay." The plaintiff's allegation is without merit. The defendant had the authority to enter into settlement negotiations, such as those that occurred with the Sommers, through which the defendant could agree to stay the project. *See* 36 C.F.R. § 217.12. Moreover, the plaintiff had the opportunity to participate in the proceedings involving the Sommers' appeal. *See* 36 C.F.R. § 217.14(a). The defendant did not exclude the plaintiff from its discussions with the Sommers. Rather, because the applicable regulations had been published in the Code of Federal Regulations, the plaintiff had notice of its opportunity to become involved in the discussions. Even after the suspension was issued, there is no indication in the record that the plaintiff attempted to get involved in the ongoing discussions regarding the Sommers' claims and appeals.

Furthermore, the fact that the defendant chose to enter into an agreement with the Sommers whereby the construction project on which the plaintiff was working would be suspended was not *per se* unreasonable. NEPA indicates a congressional intention that the federal government be aware of and explore any potential environmental impact caused by its construction projects. That the defendant in this case chose to be certain that the construction project on which the plaintiff was working would "not have a significant effect on the human environment" was not unreasonable. *See* 40 C.F.R. § 1508.13. The United States Supreme Court has stated that "NEPA does require that agencies take a 'hard look' at the environmental effects of their planned action, even after a proposal has received initial approval." *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 374, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989). The time that the defendant took to take a "hard look" at the environmental effects of the construction project on which the plaintiff in the case at bar was working was mandated in the regulations which established the Forest Service's review process of the Sommers' protest. As the Supreme Court has indicated, taking a "hard look" at the environmental effects of a construction project is not unreasonable. Further indicative of the reasonableness of the length of the delay caused by the suspension of work is that District Ranger Baker, Forest Supervisor Filius and Regional Forester Marita all completed reviews of the Sommers' protest and subsequent appeals within, and in fact in advance of, the permissible time periods established in the Code of Federal Regulations for these reviews.

The plaintiff also argues that "[o]ne cannot say that Leustek is charged with the business risk, at the time of bidding, that the Government will voluntarily agree with a citizen to suspend a project that the Government does not have to suspend." However, also as stated by the plaintiff, "one can say that Leustek was charged with knowledge of the possibility that a citizen might protest the project." Similarly, the plaintiff was expected to know that the defendant had the ability to suspend work on the project in order to adequately address the concerns of a protest brought by a citizen.

As stated previously, knowledge of the Code of Federal Regulations is charged to the contractor. Accordingly, it must be concluded that when entering its bid, the plaintiff was on notice that a citizen might protest the construction project and that such a protest could cause a delay of work on the project pursuant to the suspension of work clause that was included in the contract on which the plaintiff bid. *De Matteo Constr. Co. v. United States,* 220 Ct.Cl. at 591, 600 F.2d at 1391.

As noted in *De Matteo Constr. Co. v. United States:*

If the contract and regulations which are a part thereof provide for a right to suspend or delay the work for a limited period under particular circumstances, the con-

tracting officer's exercise of such right cannot be deemed unreasonable. *Chaney & James Construction Co., supra.* The risk of such delay, at least for the maximum period provided in the regulations, was one which plaintiff must be deemed to have assumed and to have provided for in its bid.

*Id.* at 591–92, 600 F.2d at 1391. In the instant case, no delay occurred which was not provided for in Title 36 of the Code of Federal Regulations that was in effect when the plaintiff entered into the contract with the defendant in 1989. Therefore, the delay which occurred under the suspension of work clause did not last for an unreasonable length of time.

While the plaintiff's claim is not compensable, it should not be considered frivolous and the plaintiff may genuinely believe that it was injured by the government. However, the rules that govern government contracts are different from those that govern private contracts. The court is reminded of Justice Frankfurter's advice: "[t]he oft-quoted observation in *Rock Island, Arkansas & Louisiana Railroad Co. v. United States,* 254 U.S. 141, 143, 41 S.Ct. 55, 65 L.Ed. 188 [1920], that 'Men must turn square corners when they deal with the Government,' does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Fed. Crop Ins. Corp. v. Merrill,* 332 U.S. at 385, 68 S.Ct. 1.

## CONCLUSION

The court has determined that the record presented fails to demonstrate that the defendant's initial determination to suspend work was unreasonable. Moreover, the record also fails to demonstrate that the suspension lasted for an unreasonable length of time. Thus, the court, hereby, **GRANTS** the defendant's motion for summary judgment and **DISMISSES** the plaintiff's complaint. Each party in the above-captioned lawsuit shall bear its own costs.

**IT IS SO ORDERED.**